No. 13523

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM CHRISTOPHER SATHER,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District, Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellant:

Paul B. Smith argued, Missoula, Montana
William Boggs argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert Deschamps III, County Attorney, Missoula, Montana
Ed McLean, Deputy County Attorney, argued, Missoula, Montana

Submitted: April 15, 1977

Decided: JUN - 2 1977

Filed: JUN - 2 1977

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant William Christopher Sather was convicted of the crime of attempted burglary by jury verdict in the district court of Missoula County. He was sentenced to a term of 50 years in the state prison as a persistent felony offender. Defendant appeals from the sentence imposed.

This case comes to us on the basis of an agreed statement of the proceedings, the district court file, and a certified copy of the docket entries in lieu of a transcript and exhibits pursuant to section 95-2408, R.C.M. 1947.

Defendant Sather and Claude Sylvester McIntosh were arrested on September 30, 1975. They were incarcerated in the Missoula County jail. On October 15 they were jointly charged by direct information with the crimes of attempted burglary and theft. Each entered a plea of not guilty to each charge.

On October 31 a written plea bargain proposal and agreement signed by the deputy county attorney and McIntosh was filed with the district court. The State, in consideration of a plea of guilty to the two charges, agreed to recommend a sentence of 10 years on the charge of attempted burglary and 5 years on the charge of theft to be served concurrently and another 10 years and 5 years on charges in another case to be served concurrently in that case but consecutively with the sentence imposed for the attempted burglary.

On November 4 McIntosh appeared in court with counsel, withdrew his plea of not guilty to the charges of attempted burglary and theft and entered a plea of guilty to each charge. A presentence investigation was ordered and sentencing set for November 20.

On November 20 McIntosh received a sentence in conformity with the plea bargain proposal and agreement. McIntosh had previously been convicted of three felonies, two of them within the

previous five years.

In the meantime during the week of November 7 to November 14 a parole revocation hearing was held in the Missoula County sheriff's office on defendant Sather's parole. Defendant Sather requested counsel but was not represented by counsel at the parole revocation hearing. On November 14 defendant Sather was transported to the Montana State Prison in Deer Lodge. On December 29 the Parole Board at Montana State Prison revoked defendant Sather's parole contingent on his case being reconsidered after disposition of the pending charges.

The charges of attempted burglary and theft against defendant Sather were set for trial in the April, 1976 jury term. Names of potential jurors were drawn on February 20. On March 16 the prospective jury panel was finalized and sent questionnaires by the clerk of court. On March 18 the case was set for trial on April 5 as the 9th case. On March 22 the case was reset for trial from the 9th case to the 19th case on April 5. Subsequently the case was reset for April 12 and finally for April 8.

On April 7 defendant Sather was transported from the state prison to the Missoula County jail. On that date the deputy county attorney filed and served upon defendant's counsel a notice of intent to seek increased punishment pursuant to sections 95-1506 and 95-1507, R.C.M. 1947, by reason of defendant's prior conviction of kidnapping. At that time the deputy county attorney stated that he would withdraw this notice if defendant plead guilty before the case went to trial and would thereupon recommend a sentence of 10 years.

The trial started on April 8. At the conclusion of the state's case-in-chief, the presiding judge dismissed the charge of theft on motion of the State. On April 12, the jury returned a verdict of guilty on the charge of attempted burglary. On April 19 defendant Sather was sentenced to 50 years imprisonment

in the state prison and given credit for 45 days served in the Missoula County jail. No presentence report was made by the State Board of Pardons.

On more than one occasion between defendant Sather's arrest and trial the deputy county attorney and defendant's counsel discussed the matter of defendant's plea. The deputy county attorney offered to recommend to the sentencing judge that defendant receive a sentence of 10 years in the state prison if he agreed to plead guilty.

At the start of trial and again on the day of sentencing, counsel for defendant objected to the filing of notice to seek increased punishment less than 24 hours before trial contending that the filing of such notice under the circumstances was unlawful and unfair. The district court overruled defendant's objection.

We were advised upon oral argument that during the pendency of this appeal, defendant Sather applied to the Sentence Review Board for reduction of his sentence which was denied.

Defendant has appealed from the final judgment. All specifications of error are directed at the sentence imposed. None are directed at his conviction of attempted burglary.

Defendant raises three specifications of error:

(1) That Montana's statute of increased punishment for prior offenders as applied in this case denies defendant due process of law as required by federal and state constitutional provisions.

(2) That the notice of intention to seek increased punishment was not timely served.

(3) That defendant was not given proper credit for time served prior to conviction against the sentence imposed.

Defendant's first specification of error carries us into deep constitutional waters. He claims that realistically he was

sentenced to 10 years for attempted burglary and 40 years for refusing to plead guilty and insisting upon a jury trial. The core of his argument is simply that the prosecutor used plea bargaining procedures and invoked the habitual criminal statute for an improper purpose and when that did not work, the judge punished him with an excessive sentence for refusing to plead guilty. Defendant asserts that the totality of circumstances demonstrates the truth of his contentions and specifically points to these:

(1) Knowledge by the prosecutor of defendant's prior conviction long before invoking the habitual criminal statute on the eve of trial, (2) apparent determination by the prosecutor that the public interest required no greater sentence than 10 years as evidenced by the prosecutor's offer to recommend a 10 year sentence if defendant would plead guilty, (3) after invoking the habitual criminal statute less than 24 hours before trial, the prosecutor's offer to withdraw it and recommend a 10 year sentence if defendant would plead guilty before the trial started, (4) the failure of the sentencing judge to secure and utilize a presentence investigation and report from the State Board of Pardons in sentencing defendant, and (5) the disparity of sentence imposed upon his codefendant who plead guilty as compared to the sentence he received. Because of these circumstances, defendant contends he was denied due process in violation of federal and state constitutional requirements.

The State, on the other hand, denies any abuse of discretion or misconduct on the part of the prosecutor or sentencing judge. The State points out that the practice of plea bargaining between the prosecutor and defendant wherein the prosecutor offers to recommend a lighter sentence in exchange for a guilty plea is neither coercive in a constitutional sense nor otherwise constitutionally infirm. The State argues that where, as here, there is

no evidence of bad faith, discrimination or arbitrary use of plea bargaining, it is unobjectionable. The State emphasizes that both the prosecutor and judge acted within the limits of their statutory authority in sentencing defendant under Montana's habitual criminal statute. The State denies any abuse of discretion on the part of the prosecutor or judge. In short, the State denies any "due process" violation under the facts of this case.

It is important to note that defendant does not attack plea bargaining per se nor contend that Montana's habitual criminal statute is unconstitutional on its face. Defendant's constitutional attack is bottomed on the proposition that these procedures were unconstitutionally applied in his case to deny him due process of law.

The broad dimensions of the pertinent constitutional requirements are quite clear. A person cannot be deprived of his liberty without due process of law. Fourteenth Amendment, United States Constitution; Art. II, Section 17, 1972 Montana Constitution. A defendant in a criminal case has a constitutional right to a jury trial, Sixth Amendment, United States Constitution; Art. II, Section 26, 1972 Montana Constitution. He also has the right or privilege against self-incrimination. Fifth Amendment, United States Constitution; Art. II, Section 25, 1972 Montana Constitution. He waives these rights by entering a plea of guilty, but such waiver must be voluntary. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L Ed 2d 747, and cases cited therein. A coerced plea of guilty violates constitutional due process requirements. Rohrer v. Montana, 237 F.Supp. 747 (1965). Impermissible coercion may exist in a variety of forms arising out of the conduct of the prosecutor or judge acting within statutory authority. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L Ed 2d 656; Hayes v. Cowen, United States Court of Appeals,

6th Circuit (No. 76-1409), December 30, 1976.  Vindictive, re-
taliatory or punitive use of otherwise unobjectionable procedures
offends constitutional due process requirements.  Blackledge v.
Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L Ed 2d 628; North Carolina
v. Pearce, supra; Hayes v. Cowen, supra.

The record in this case strongly suggests a constitution-
ally impermissible use of plea bargaining and the habitual crim-
inal statute by the prosecutor.  Long after defendant's background
and prior conviction were known to the prosecutor and after plea
bargaining had failed, the prosecutor invoked the habitual crim-
inal statute to subject defendant to a potential sentence of 100
years as opposed to the statutory maximum of 10 years for attempted
burglary.  See section 95-1507, R.C.M. 1947; section 94-4-103,
R.C.M. 1947; section 94-6-204, R.C.M. 1947.  After invoking the
habitual criminal statute the day before trial, the prosecutor
offered to withdraw this action and recommend a sentence of 10
years if defendant would plead guilty before the trial started.
The record is barren of any event or circumstance that would jus-
tify such action by the prosecutor within the legitimate object-
ives of the habitual criminal statute or the criminal justice
system.  Although the use of the habitual criminal statute is
discretionary with the prosecutor, that discretion is not un-
limited and cannot be used for improper purposes.  Here the prose-
cutor knew of defendant's prior criminal record and had the parole
board's evaluation of defendant before him and had completed his
information gathering long before invoking the habitual criminal
statute.  When these functions were completed, the prosecutor was
in a position to evaluate whether the habitual criminal statute
should be invoked in the public interest or not.  The prosecutor
did not do so at that time but waited until plea bargaining had
broken down and trial was only 24 hours away and even then offered
to withdraw his action under the habitual criminal statute and

- 7 -

recommend a 10 year sentence if defendant would plead guilty.
This action is not consistent with a determination that the
public interest required increased punishment of defendant under
the habitual criminal statute. The only supportable inference
is that such conduct was used in an attempt to coerce defendant
into waiving his right to a jury trial. Subsequent events,
while not conclusive, lend support to this inference.

Retaliatory action on the part of the prosecutor for the
exercise of procedural rights by an accused has been held to vio-
late consitutional due process requirements. Blackledge v. Perry,
supra. There the United States Supreme Court held that where
defendant had appealed his conviction of misdemeanor assault in
a lower court and was entitled to a trial de novo in superior
court under state law, the prosecutor's subsequent action in ob-
taining an indictment for felony assault covering the same con-
duct contravened the due process clause of the Fourteenth Amend-
ment. The basis for the ruling was that a defendant pursuing
his procedural rights under state law is entitled to pursue those
rights without apprehension that the State will retaliate by
substituting a more serious charge for the original one and thus
subject him to a significantly increased potential period of in-
carceration.

Similar holdings have been handed down by other federal
courts. The federal court of appeals for the District of Columbia
reversed a conviction for the first degree murder following the
defendants securing of a mistrial on a prior charge of second
degree murder. United States v. Jamison, 505 F.2d 407 (1974).
The United States District Court in California refused to allow
prosecution of an indictment on more serious charges after de-
fendant had asserted his right to a change of venue on an indict-
ment charging less serious offenses. United States v. DeMarco,
401 F.Supp. 505 (1975). And in United States v. Ruesga-Martinez,

534 F.2d 1367 (9th Cir. 1976) the federal court of appeals for the 9th Circuit held that a defendant cannot be tried on a felony indictment after he has refused to plead guilty to a misdemeanor, if no justification for the increase in severity of the charges is offered. We perceive no difference in principle between these cases and the instant case where the charge remains unchanged but a substantially increased penalty is sought by invoking the habitual criminal statute.

The federal court of appeals for the 6th Circuit has recently held that the prosecutor's tactics, in a case involving plea bargaining and a habitual criminal statute, placed the defendant in fear of retaliatory action for insisting upon his constitutional right to stand trial and that constitutional due process was violated. Hayes v. Cowan, supra. This case is similar, although not identical, to the instant case on the facts. In Hayes the defendant was indicted for forgery. After arraignment, a pretrial conference was held with the prosecutor who offered to recommend a 5 year sentence if defendant would plead guilty. Defendant was warned that if he did not plead guilty he would be charged under the habitual criminal statute. Defendant refused to plead guilty, but insisted on receiving a full trial. The prosecutor then obtained a new indictment from the grand jury charging defendant under the habitual criminal statute based upon the forgery as a third offense. Defendant was convicted by a jury, and on the instructions of the judge, the mandatory life sentence for a third offense habitual criminal was imposed. In vacating the sentence, the court in Hayes v. Cowan, supra, set forth its reasoning:

> "The Commonwealth urges that the entire concept
> of plea bargaining will be destroyed if prose-
> cutors are not allowed to seek convictions on
> more serious charges if defendants refuse to
> plead guilty. We do not agree. Although a
> prosecutor may in the course of plea negotiation

offer a defendant concessions relating to
proseuction under an existing indictment,
[Citations omitted.] he may not threaten a
defendant with the consequence that more severe
charges may be brought if he insists on going to
trial. When a prosecutor obtains an indictment
less severe than the facts known to him at the
time might permit, he makes a discretionary
determination that the interests of the state
are served by not seeking more serious charges.
[Citations omitted.] Accordingly, if after plea
negotiations fail, he then procures an indictment
charging a more serious crime, a strong inference
is created that the only reason for the more
serious charge is vindictiveness. Under these
circumstances, the prosecutor should be required
to justify his action. In this case, a vindic-
tive motive need not be inferred. The prosecutor
has admitted it."

The only material distinction between Hayes and the case on appeal

is that there the prosecutor expressly threatened the defendant

with mandatory increased punishment under the habitual criminal

statute if he did not plead guilty, while here the prosecutor ex-

pressed no threat but simply invoked a discretionary and potentially

greater penalty after plea bargaining had broken down. In our

view, the coercive effect is as surely present in the instant case

as in Hayes, differing only in degree.

For the foregoing reasons and based on the cited authority,

we hold that defendant was denied due process under federal and

state constitutional provisions as applied to the facts of this

case. We do not hold that the plea bargaining process in itself

is constitutionally infirm nor that Montana's habitual criminal

statute is unconstitutional on its face.

Defendant's second specification of error relating to the

timeliness of invoking the habitual criminal statute is inseparable

from the constitutional issue. As the timing of its injection

into the case has been discussed previously and forms a basis for

our ruling on the constitutional issue raised in defendant's first

specification of error, further discussion appears unnecessary.

In its brief the State concedes defendant's third spec-

ification of error. The State admits that defendant is entitled

to credit of 6 months and 22 days against his sentence.  This represents the time actually served by defendant between the date of his arrest and the date of sentence.

The 50 year sentence imposed is vacated.  The State's notice of intent to seek increased punishment under the habitual criminal statute is ordered stricken.  The cause is remanded to the district court with directions to resentence the defendant for the crime of attempted burglary with appropriate credit for time actually served according to law.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. James Salansky, sitting in
place of Mr. Justice Daniel J. Shea.

(Specially concurring)
I concur in the result of the foregoing decision but not in the entire rationale of the majority opinion.

- 11 -