No. 13875

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA,

         Plaintiff and Respondent,

-vs-

LYNN C. GALLAHER and
BRIAN J. COLEMAN,
         Defendants and Appellants.

Appeal from: District Court of the Third Judicial District,
         Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellants:

        Byron W. Boggs argued, Anaconda, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen Chronister, Assistant Attorney General, argued,
         Helena, Montana
        James J. Masar, County Attorney, Deer Lodge, Montana

Submitted: March 9, 1978

Decided: JUN 1 5 1978

Filed: JUN 1 5 1978

Thomas J. Kearney
                       Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants Lynn Gallaher and Brian Coleman appeal from their convictions of committing the offense of escape and from their subsequent designations by the District Court as persistent felony offenders.

At the time of their escape attempt, defendants Gallaher and Coleman were inmates at Montana State Prison, serving sentences for prior felony convictions. On January 6, 1977, Gallaher and Coleman, who had been undergoing hospital care at Powell County Hospital in Deer Lodge, Montana, were waiting to be transported back to the prison by Officer Dale Dodge of the Montana State Prison staff. Officer Robert McNally, the warden's administrative assistant at the prison, was at the hospital at the same time conducting other business. Coincidentally, he was driving a "cage car", a station wagon used to transport prisoners back and forth from the prison. When Officer Dodge discovered this, he telephoned prison authorities and arranged to transport Gallaher and Coleman back to the prison in Officer McNally's car instead of waiting for another car and driver to arrive.

Officer Dodge escorted Gallaher and Coleman out of their hospital room and down the hallway to the hospital entrance. On their way they passed Officer McNally who was talking with others at a nurses' station in the hallway. When the three arrived at the hospital entrance, Officer McNally was still some distance behind them. Once outside, Officer Dodge waited for Officer McNally to come out before putting the defendants into the car. When Officer McNally did not immediately follow, the defendants looked at each other and decided to run for it.

As soon as the defendants began running, Officer Dodge shouted to them to stop. He first fired a warning shot high in the air and when defendants did not stop, he fired another over

their heads. Eugene Hurlburt, a maintenance man at the hospital, and Officer Dodge then gave chase to defendants and caught both of them within two hundred yards of the hospital.

On January 31, 1977, Gallaher  and Coleman were charged by information filed in the District Court, Third Judicial District, Powell County, with committing the offense of escape. Both defendants plead not guilty and the District Court set a trial date for March 10, 1977.

On March 9, 1977, the deputy county attorney served defendants' counsel with notices of intent to request a finding of persistent felony offender based on the prior felony convictions of each defendant. At that time, the prosecutor proposed to defense counsel that if the defendants changed their pleas to guilty, he would not file those requests.

At the outset of defendants' trial, their counsel moved to withdraw their pleas of not guilty and to enter guilty pleas. The court asked defendants' counsel whether defendants felt any compunction or duress to change their pleas. When defense counsel responded that if he was in the defendants' position he would feel duress, the court denied his motion. The State then filed with the District Court a notice of request for finding of persistent felony offender against Gallaher  for sentencing and parole purposes and a similar notice against Coleman for parole purposes. (Because Coleman was under 21 years of age at the time of committing the escape, he could not be sentenced as a persistent felony offender. Section 95-1507(6), R.C.M. 1947 (amended 1977).)

At trial defendants attempted to establish the defense of entrapment through cross-examination of the State's witnesses. The District Court sustained objections to certain of defense counsel's cross-examination questions and subsequently refused all of defendants' instructions on the entrapment defense. Defendants were eventually convicted by jury of committing the

offense of escape. On April 4, 1977, the District Court designated both defendants as persistent felony offenders and sentenced them each to eight years in prison to be served consecutively to their prior sentences.

In their appeal defendants raise the following issues:

1. Did the manner in which the State used the habitual criminal statute during plea bargaining negotiations constitute an unlawful attempt to coerce a guilty plea in violation of the defendants' constitutional right to a jury trial?

2. Did the District Court err in sustaining objections to certain of defense counsel's cross-examination questions through which defendants attempted to develop a defense of entrapment?

3. Did the District Court err in refusing defendants' instructions on the entrapment defense?

Defendants' first specification of error is that they were deprived of due process of law because less than 24 hours before trial the prosecutor threatened to invoke the habitual criminal statute unless the defendants changed their pleas to guilty. Defendants claim that the habitual criminal statute was invoked to punish them for attempting to exercise their right to a jury trial, that the prosecutor knew of defendants' prior felony convictions long before he filed notice of intent to seek increased punishment, that this action is inconsistent with a belief by the prosecutor that a longer sentence was necessary, and the record is barren of any justification for the prosecutor's action. They argue that this Court's holding in State v. Sather, (1977), ____Mont.____, 564 P.2d 1306, 34 St.Rep. 462, is dispositive of their case. They ask this Court to vacate their sentences, strike the State's notices to seek increased punishment, and remand their case for resentencing.

The State counters that there are decisive factual differences between this case and Sather; consequently, it should not be regarded as controlling. Alternatively, it argues that the recent United States Supreme Court decision of Bordenkircher v. Hayes vitiates the Sather rationale. See, Bordenkircher v. Hayes, (1978), ____U.S.____, 98 S.Ct. 663, 54 L Ed 2d 604, 612, 22 Crim L.R. 3023, rev'g, Hayes v. Cowan, (6th Cir. 1976), 547 F.2d 42. In passing, we note that the Supreme Court's holding in Bordenkircher was a narrow one. It held only that " * * * the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." 54 L Ed 2d 612. Because we agree with the State that this case is factually distinguishable from Sather, we conclude that Sather does not control the outcome of this case. Additionally, we find no due process violation involved here.

In Sather defendant Sather and Claude McIntosh were charged with the offenses of attempted burglary and theft on October 30, 1975. Both initially plead not guilty to the charges, but on October 31, McIntosh entered into a written plea bargain agreement with the State. In consideration for a plea of guilty to the two charges, the State agreed among other things to recommend sentences of ten years on the charge of attempted burglary and five years on the charge of theft to be served concurrently. McIntosh changed his plea to guilty and on November 20 he received a sentence in conformity with the plea bargain agreement.

In plea bargaining negotiations with Sather, the State was willing to recommend a sentence of ten years, but Sather rejected that plea bargain arrangement. From mid-November until the day before his trial Sather was incarcerated at the Montana

State Prison in Deer Lodge. On April 7, 1976, he was transferred back to Missoula for trial. Only then did the prosecutor file notice of intent to seek increased punishment under the habitual criminal statutes. At the same time, however, the prosecutor offered to withdraw this notice if Sather would plead guilty before trial began the next day and to recommend the same ten year sentence previously offered. Sather refused to plead guilty. He was then convicted on the attempted burglary charge and under the habitual criminal statute was given a 50 year sentence.

On appeal Sather argued that the prosecutor had used plea bargaining procedures and invoked the habitual criminal statute for an improper purpose and that the judge had punished him with an excessive sentence for refusing to plead guilty. Sather presented facts which showed that the prosecutor knew of his prior criminal record, had the parole board's evaluation of Sather before him and had completed his information gathering long before invoking the habitual criminal statute; that in numerous plea bargaining sessions the prosecutor had offered to recommend a ten year sentence if Sather would plead guilty; that the prosecutor had waited until plea bargaining had broken down and trial was only 24 hours away before he threatened to invoke the habitual criminal statute; and that even then the prosecutor offered to withdraw his invocation of the habitual criminal statute and still recommend a ten year sentence if Sather would plead guilty.

The crucial factors in Sather were Sather had shown that the prosecutor was in a position to evaluate whether or not it was in the public interest to invoke the habitual criminal statute long before he did invoke it and that in contrast to his prior evaluation of the case the prosecutor in the 24 hours prior to trial threatened to recommend greatly increased punishment under the habitual criminal statute unless Sather pleaded guilty. We concluded that the only supportable inference from the prosecutor's

- 6 -

conduct was that the prosecutor had punished Sather for refusing
to waive his right to a jury trial and that the disparity in
sentences which the District Court gave to Sather and McIntosh
lent support to the inference. The facts of the Sather case
strongly suggested that Sather had been treated unjustly.

The Sather case was submitted to the court upon an agreed
statement of the proceedings, the District Court file, and a cer-
tified copy of the docket entries. Although the defendants here
make allegations similar to those Sather made, their case, in
contrast, is not as well documented. Here, we have the District
Court file to refer to, but we have neither an agreed statement
of the proceedings up to the point of trial, nor a certified copy
of docket entries. Consequently, we are unable to determine the
point at which the prosecutor was able to fairly evaluate whether
or not it was in the public interest to invoke the habitual crim-
inal statute. Neither do we know the prosecutor's evaluation of
the case as shown by the length of sentence he was willing to
recommend in return for guilty pleas by the defendants nor the
amount of increased punishment he threatened to seek if the de-
fendants did not plead guilty.

Another crucial difference between Sather and the instant
case is in the length of sentences actually given. Invocation
of the persistent felony offender statute for sentencing purposes
mandates that the offender shall be imprisoned for a term of not
less than five years nor more than 100 years. Section 95-1507(2),
R.C.M. 1947 (amended 1977). Sather received a 50 year sentence
for an offense which otherwise carried a maximum ten year penalty.
In the instant case, the District Court, which had refused to
allow either defendant to change his plea to guilty, sentenced
Gallaher  to eight years in prison. Although the escape offense
carried a maximum penalty of ten years, he was subject to increased

- 7 -

punishment of up to 100 years under the habitual criminal statute. In contrast, Coleman, who was not subject to the statute for sentencing purposes, received a similar eight year sentence. We are unable to perceive any indication here that the District Court sought to punish defendants for not pleading guilty when it was the District Court itself which refused to allow defendants to change their pleas to guilty. The sentences which defendants actually received here do not support such a contention.

Defendants have not demonstrated a similarity to the disparity between sentences the prosecutor was willing to recommend and the sentences actually given nor the disparity in sentences between defendants themselves that was present in Sather. Because of this, we do not feel the facts of this case justify an inference that the defendants were punished for not pleading guilty. We, therefore, refuse to hold that defendants were denied due process of law.

Defendants' second specification of error relates to the District Court's sustaining objections to certain of defendants' cross-examination questions through which they were attempting to establish a defense of entrapment. At trial the defendants did not deny that they attempted to escape; rather, they asserted the defense of entrapment as an excuse for their actions. Defendants claim the District Court improperly limited their cross-examination of the State's witnesses, Officers Dodge and McNally, thereby depriving them of an opportunity to prove the entrapment defense.

At the outset, we note that at the time of this trial, March 10, 1977, the new Montana Rules of Evidence were not yet applicable. The new rules became effective July 1, 1977, for all trials held thereafter. In the Matter of the Application of the Montana Bar Association, (1976), ____Mont.____, 34 St.Rep. 302A, 302B. We will not, therefore, make retroactive the application

of the new Rules of Evidence. Because Montana's new Rules of Evidence have superseded some of the former rules, we emphasize that our discussion herein is of the rules in effect at the time the trial occurred.

Section 93-1901-7, R.C.M. 1947, defines the allowable scope of cross-examination: "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith * * *". This section permits a wide range for cross-examination and the courts should incline to extend, rather than to restrict, the right. " * * * Properly understood, the right extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy." Kipp v. Silverman, (1901), 25 Mont. 296, 306, 64 P. 884, 888.

Defendants complain of six instances in which they allege the District Court allegedly improperly limited their cross-examination of Officer Dodge. All six instances were questions relating to what the proper prison procedure was for transporting the prisoners from their hospital room back to the prison, whether Officer Dodge followed that prison procedure, and if not, why he did not follow it. Although Officer Dodge testified on direct examination that he led the prisoners from their hospital room down the hallway and out the door, he did not testify to what the proper prison procedure was in doing so nor did he testify to whether his conduct was in conformity with prison procedure. In regard to prison procedure, he only testified to what was proper procedure to follow when prisoners were occupying a hospital room. For this reason, we think defendants' questions were outside the scope of Officer Dodge's direct examination and therefore, this was improper cross-examination.

Defendants also complain of two other instances in which

the District Court sustained objections to their cross-examination questions of Officer McNally. Defendants' questions to Officer McNally related to whether it was prison procedure to transport prisoners in handcuffs and belts such as the ones introduced as exhibits and to whether the prison classified inmates according to the degree of risk they posed to the prison. On direct examination Officer McNally only testified that he saw Officer Dodge and the two prisoners walk down the hallway and leave the building and then he saw the prisoners begin to run. We find no testimony in Officer McNally's direct examination which would bring these cross-examination questions within the scope of his direct examination. Again, we do not think the District Court erred in excluding these questions.

The latitude of cross-examination is in the discretion of the trial court, and this Court will not interfere unless it is manifest that the trial court abused its discretion. State v. Carns, (1959), 136 Mont. 126, 136, 345 P.2d 735. We find no abuse of discretion here.

The defendants' third specification of error relates to the District Court's refusal to submit any of their proposed instructions on the entrapment defense to the jury.

To establish the defense of entrapment, the defendants must prove: (1) That criminal intent or design to commit the crime originated in the mind of the law enforcement officer; (2) that no criminal intent or design originated in the minds of the accused; and (3) that the law enforcement officer lured or induced the defendants into committing a crime they had no intention of committing. Section 94-3-111, R.C.M. 1947; State v. Grenfell, (1977), ____Mont.____, 564 P.2d 171, 34 St.Rep. 345, 348; State ex rel. Hamlin, Jr. v. District Court, (1973), 163 Mont. 16, 20, 515 P.2d 74. Where there is no evidence in the record supporting each element of the entrapment defense, the

court may properly refuse to instruct the jury on the defense. State v. Parr, (1955), 129 Mont. 175, 182, 283 P.2d 1086.

We have reviewed the transcript of defendants' trial closely and do not find any evidence showing that the escape plan originated with prison officials or that they lured or induced the defendants into escaping. At most, the prison officers' conduct presented only an opportunity to escape, of which they took advantage. Merely affording an opportunity for commission of the offense, however, does not come within the entrapment rule. State v. Karathanos, (1972), 158 Mont. 461, 470, 493 P.2d 326. The defendants' attempted escape was on impulse. When the defendants walked outside the hospital, they testified that it "* * * didn't look like anything [was] going on * * *" so they "* * * hit the road". They "* * * just decided to go". For this reason, we conclude the District Court did not err in refusing to submit defendants' instructions on entrapment to the jury.

Defendants' convictions are affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

_____
Hon. Alfred B. Coate, District Judge, sitting with the Court.