No. 81-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

HAROLD McCLURE,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Patterson, Marsillo, Tornabene & Schuyler, Missoula,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps III, County Attorney, Missoula,
Montana

---

Submitted on briefs: January 20, 1983

Decided: February 24, 1983

Filed: FEB 24 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals a conviction of burglary entered on October 3, 1980, in the Fourth Judicial District in and for the County of Missoula. The nature of this appeal concerns the defense of entrapment.

The defendant is asking us to find that entrapment existed as a matter of law. This we cannot do. Whether or not defendant was lured or induced into committing the offense was a factual question for the jury, evidence being presented on either side. In such a situation we will not overturn a jury verdict. Consequently, we must affirm the conviction.

On March 27, 1980, the defendant and his friend, Merritt Brown, met with Terry Padernos in a Missoula bar. Padernos had been casually acquainted with McClure and Brown. At this meeting, Padernos was asked if he wanted to buy an electric guitar. Padernos testified that various other items were also offered for sale, including a motorcycle. He testified that he learned that the guitar and other items had come from a trailer in Frenchtown. Padernos purchased the guitar and because he was suspicious, contacted Missoula County detective Chuck McCall and informed him that he thought a burglary had occurred. The defendant disputes this version of the March 27 meeting. The defendant testified that Brown did sell a guitar to Padernos but there was no conversation about other items for sale nor conversations about a trailer in Frenchtown.

Padernos also testified that on March 28 he again met with McClure and Brown. This time, two rifles were offered for sale. It was suggested that Brown would bring the rifles for inspection. Prior to seeing the rifles, Padernos contacted detective McCall and it was arranged that McCall would witness the transaction from a distance. Brown produced the rifles. Padernos took the rifles and had them in his possession for about an hour. During this time, Padernos showed the rifles to McCall who marked

them. Padernos returned the rifles to Brown. No purchase was made. Concerning this transaction, McClure testified that he was not present, but was out of town. Later during the same day, March 28, Padernos testified that McClure and Brown again offered to sell him a motorcycle. He further testified that the two discussed going back to Frenchtown to see if the motorcycle was still there.

The next contact, according to the testimony of Padernos was on the afternoon of April 1. At that time Padernos and McClure had a telephone conversation. McClure asked Padernos if he was still interested in purchasing the motorcycle. Padernos said he was, if the price and size were right. Detective McCall had instructed Padernos to indicate interest if an offer was made. McClure stated that he would get in contact with Brown and they would go to Frenchtown to see if the motorcycle was still there and to see what size it was. Within a short time Brown and McClure went to see Padernos in person. The parties discussed purchase price; Padernos offered $600, if the size was right. The defendant testified that at this meeting Padernos told them where to get the motorcycle and how to steal it.

Meanwhile, detectives had learned of a trailerhouse in Frenchtown that had recently been burglarized. Many of the items taken from this trailer were later recovered from Brown's house. The detectives had noted that a motorcycle was still parked in the attached garage. Through information received from Padernos, it was believed that McClure and Brown would come to steal the motorcycle. A stakeout was set up on the evening of April 1. Officers witnessed the crime and followed the defendant and his accomplice back to Missoula. The two contacted Padernos and a plan was set to conclude the sale. Thereafter, Brown and McClure were arrested.

The entrapment defense is provided for in section 45-2-213, MCA:

> "A person is not guilty of an offense if his conduct is incited or induced by a public ser-

vant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated."

We have stated that entrapment is an affirmative defense, as such, the burden of proof is on the defendant. State v. Kamrud (1980), ___ ___ Mont. __ , 611 P.2d 188, 37 St.Rep. 933. Although entrapment may exist as a matter of law, Kamrud, supra, and State v. Grenfell (1977), 172 Mont. 345, 564 P.2d 171, where conflicting evidence is presented, as in this case, the issue is one for the jury. State v. Frates (1972), 160 Mont. 431, 503 P.2d 47. It is evident that the jury did not accept defendant's entrapment theory. A review of the record shows that they were properly instructed. Jury instruction number twelve contains language virtually identical to the above-cited statute. In our review of jury verdicts we have said:

"It is the prerogative of the jury to decide the facts, and this Court must uphold such findings when they are supported by substantial evidence. As we stated in State v. Kirkaldie (1978), 179 Mont. 283, 587 P.2d 1298, 1305, 35 St.Rep. 1532, 1539, '[t]he jury is the fact-finding body and its decision is controlling . . . Given the required legal minimum of evidence, we will not substitute our determination of the facts for that of the jury . . . If substantial evidence is found to support the verdict, it will stand . . .' (citations omitted.)" State v. Rumley (1981), ___ ___ Mont. ___ , ___ , 634 P.2d 446, 449, 38 St.Rep. 1351A, 1351E.

We find more than substantial evidence to support the conviction. Padernos testified that Brown and McClure repeatedly offered items for sale. On several occasions a motorcycle was offered. Padernos further testified that Brown and McClure stated they had several items that came from a trailer in Frenchtown. In the presence of Padernos, Brown and McClure discussed whether or not the motorcycle was still at Frenchtown. These facts and others, which were obviously believed by the jury, are contrary to defendant's entrapment theory. The evidence presented supports the jury's verdict.

The defendant's conviction is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

- 5 -