No. 93-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

DUANE BRANDON,

     Defendant and Appellant.



FILED

MAR 22 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
              In and for the County of Park,
              The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Charles F. Moses; Moses Law Firm, Billings, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General, Cregg
          Coughlin, Ass't Attorney General, Helena, Montana

          Wm. Nels Swandal, Park County Attorney, Jon Hesse,
          Depty Park County Attorney, Livingston, Montana

Submitted on Briefs: January 7, 1994

Decided: March 22, 1994

Filed:

_____

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Duane Brandon (Brandon) appeals the Sixth Judicial District Court, Park County, jury verdict which found him guilty of conspiracy to commit deliberate homicide against his wife, Patsy Brandon (Patsy).  We affirm.

Five issues are before this Court:

1.  Did the District Court err by refusing Brandon's proposed jury instructions on solicitation and entrapment?

2.  Did the District Court err by denying Brandon's motion to dismiss and acquit on the grounds of entrapment?

3.  Did the District Court err by restricting Brandon's cross-examination of the informant?

4.  Did the District Court err by refusing to admit Brandon's statement to police into evidence?

5.  Did the District Court err by refusing Brandon's motion for a change of venue?

Brandon and Patsy were married for approximately thirty years. They lived in Livingston, Montana, and had three children.  Brandon was a self-employed heavy equipment operator/contractor and Patsy was a clerk at Gateway Office Supply.  After the couple separated in August 1991, Patsy moved to a trailer court near Livingston. Divorce proceedings began in October 1991,  and the parties attempted to negotiate a property settlement. Although the parties constructed a draft agreement, no final agreement was ever reached.

Roger Gorham (Gorham) was an acquaintance of Brandon's; they

met when **Brandon** was working on a road in the subdivision where Gorham lived. Upset about his pending divorce and potential financial difficulties associated with the future property settlement, **Brandon** told Gorham that he wished his wife would **"disappear."** **Brandon** hoped Patsy would have an accident or that "somebody would take a shot at her."

Sensing Brandon's mind-set, Gorham suggested that **Brandon** discuss his divorce problems with Bill Bartlett (Bartlett), a Bozeman attorney. On October 14, 1991, Gorham drove **Brandon** to Bozeman to meet with Bartlett. During the drive, **Brandon** stated that he wished his wife was dead or that someone would kill her. When Gorham introduced **Brandon** to Bartlett, but before **Brandon** and Bartlett met privately, the trio joked about **Brandon** wanting to kill his wife.

After the consultation, **Brandon** and Gorham returned to Livingston and Gorham went to a motel lounge for a drink. While there, Gorham told Park County Undersheriff Lee Keto that a mutual friend wanted Gorham to kill his wife. The two laughed, and no more was said at that time.

On February 3, 1992, **Brandon** visited Gorham and told him that he had met with an attorney and learned that he was going to have to pay a large divorce settlement. **Brandon** wanted Gorham to kill Brandon's wife; Gorham was to receive $10,000--possibly in the form of construction work--as payment for killing Brandon's wife.

They were to meet later that evening to discuss the details. Following the first visit, Gorham contacted Undersheriff **Keto,**

3

informing him that Brandon had made statements about wanting to kill Patsy. With Gorham's consent, Park County sheriffs attached a hidden wire, or microphone, to Gorham.

Gorham then drove to Brandon's home and picked him up. They drove to the trailer court where Patsy lived. While there, Brandon discussed methods of killing Patsy. The conversation was recorded by law enforcement officers.

Brandon suggested that Gorham asphyxiate Patsy with natural gas. He gave Gorham suggestions on how to avoid detection. Brandon alternatively suggested that Gorham might lure Patsy to Big Timber, kill her, and dump her body in a "green box," or trash disposal bin. He described in detail the location of the disposal bins. Brandon told Gorham he was leaving Montana temporarily and wanted the job done while he was gone.

To assist Gorham, Brandon had Gorham write down Patsy's place of employment, her work phone number and her work schedule. Brandon wanted someone to find Patsy's body while Brandon was gone from the state. Brandon even devised a signal by which Gorham could convey to Brandon, through Brandon's girlfriend, whether Patsy's body was found. When Gorham asked if Brandon might have second thoughts about this later, Brandon made it clear that he was serious and that he wanted his wife killed.

On the following day, Gorham again met with Brandon. This conversation was recorded as well. At that meeting, Brandon delivered a .22 caliber pistol to Gorham. Brandon taught Gorham how to use the gun and suggested that Gorham purchase solid-point

4

bullets, rather than hollow points, because they "penetrate better." Gorham asked, "Do you think these will go through her skull?" The following exchange occurred:

> BRANDON: Oh yeah. If you could shoot her in, right in here, the butt of the ear, right in here somewhere, it'll--it'll put her down. And then the best thing to do is to put the [gun] right up there close and just pull it off about three times, four times. I'll guarantee that son of a bitch will do the job. That [expletive] thing right there I shot a bull moose with antlers on it about this wide.

> GORHAM : Okay, this is it then. . . . Are you sure this'll do the trick?

> BRANDON: You [expletive] right. If that son of a bitch will kill a bull moose, it ought to kill her.

Brandon advised Gorham that he could dispose of the gun by throwing it into a deep hole in the Yellowstone River, and explained to him where the hole was located.

Later that evening, Gorham again met briefly with Brandon. This conversation was also recorded. Gorham confirmed that Brandon wanted his wife killed. Gorham asked about his payment, reminding Brandon that he was to receive $10,000. Brandon responded, "I'll do it, [expletive], even if I have to haul gravel to finish it up." Brandon then advised Gorham to put a garbage sack over Patsy's head "to keep her from bleeding all over the [expletive] place." Brandon further suggested:

> If you can get into a situation where you can knock her in the [expletive] head, cold cock her, then you can take that [expletive] gun and stick it right up here, and angle it up into her [expletive] brain, like this way. . . . Yeah, and it won't leave no [expletive] blood right here. You might get a little out of her [expletive] nose or something, but hey, you get a [expletive] gunny sack over her, or a plastic sack over her, and you got it made.

Brandon was arrested the following day. On February 19, 1992, Brandon was charged with conspiracy to commit deliberate homicide in violation of § 45-4-102, MCA, or, in the alternative, with solicitation to commit deliberate homicide in violation of § 45-4-101, MCA. The conspiracy count was dismissed on September 8, 1992, and Brandon was tried by a jury on December 14-17, 1992. The jury found Brandon guilty of solicitation to commit deliberate homicide. Brandon's motion for a new trial was denied.

On February 12, 1993, Brandon was sentenced to twenty-five years in prison with five years suspended. He was designated a dangerous offender for purposes of parole eligibility. Brandon appeals. We affirm.

I

Did the District Court err by refusing Brandon's proposed jury instructions on solicitation and entrapment?

Our standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Lundblade (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548. The district court must instruct the jury on each issue or theory which is supported by the record. State v. Popescu (1989), 237 Mont. 493, 495, 774 P.2d 395, 396. Brandon contends that he was denied an opportunity for a fair trial because the District Court refused his instructions regarding solicitation and entrapment.

Brandon claims that the court should have accepted his Proposed Instruction No. 27:

YOU are instructed that a conviction of criminal solicitation must be based upon prosecutorial proof beyond the mere verbal act of soliciting another to commit a crime. The State is required to present sufficient evidence to permit a jury to conclude beyond a reasonable doubt that the solicitation itself was done with the specific purpose to promote or facilitate the commission of the crime solicited. Accordingly, a conviction cannot be established where the actions have been innocently motivated, done in jest, and with no proof beyond a reasonable doubt of a purpose to actually intend to carry out such a crime.

Brandon also offered Proposed Instruction No. 28:

You are instructed that one of the elements required to be proven in this case is that the defendant solicited Roger Gorham for the purpose of committing a homicide. The evidence must be sufficient to prove beyond a reasonable doubt that Duane Brandon acted with the specific intent to promote or facilitate the commission of a crime. It is not sufficient, however, to show merely that the accused solicited the commission of the crime. Rather, sufficient circumstances surrounding the overt act of solicitation must be presented which corroborate that the act in fact was done with the requisite specific intent or purpose. This protects those actions that may have been innocently motivated, done in jest, or with no purpose to actually have a crime committed.

These instructions, Brandon contends, properly instruct that to prove solicitation, the State must additionally prove "circumstances strongly corroborative of [specific] intent." State v. Aalbu (Colo. 1985), 696 P.2d 796, 805 (quoting State v. Latsis (Colo. 1978), 578 P.2d 1055, 1057).

In Aalbu and Latsis, the Colorado Supreme Court considered constitutional challenges to Colorado's criminal solicitation statute on grounds of vagueness and overbreadth. Interpreting Colorado's solicitation statute in both cases, the court held that the statute--which required the "added element" of circumstances strongly corroborative of specific intent--was neither overly broad

7

nor unconstitutionally vague.

The State argues, and we agree, that Montana's solicitation statute does not require proof of circumstances strongly corroborative of specific intent. Rather, § 45-4-101(1), MCA, provides that

> [a] person commits the offense of solicitation when, <u>with the **purpose** that an offense be committed,</u> he commands, encourages, or facilitates the commission of that offense.

(Emphasis added.) According to the State, the jury was properly instructed on the elements of solicitation. The State proposed, and the District Court adopted, Instruction No. 11, which read:

> You are instructed that to convict the defendant of solicitation, the State must prove the following elements:
>
> First: That the defendant commanded, encouraged or facilitated Roger Gorham to commit deliberate homicide, a felony: and
>
> Second: That the defendant did so with the purpose that the crime of deliberate homicide be committed, whether or not it was actually committed.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

The jury also received Instruction No. 12 on the requisite state of mind or intent to find **Brandon** guilty:

> A person is not guilty of an offense unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described by the statute.
>
> A material element of every offense is a voluntary act, which includes an omission to perform a duty which the

8

law imposes and which he is physically capable of performing.

The prosecution must prove, beyond a reasonable doubt, not only the acts alleged, but also that the defendant possessed, at the time of the act, the mental state required.

The jury received Instruction No. 17, which provided that

[a] person acts purposely when it is his conscious object to engage in conduct of that nature or to cause such a result.

We hold that the jury was properly instructed as to the definition of "purposely," the mental state element of solicitation. The State's instructions adequately covered the law on solicitation and the requisite mental state. See Funk v. Robbin (1984), 212 Mont. 437, 447, 689 P.2d 1215, 1221.

Brandon asserted the defense of entrapment at trial. The District Court refused Brandon's Proposed Instruction No. 36, which read:

You are instructed that with respect to the defense of entrapment, the State is required to prove beyond a reasonable doubt that the defendant, Duane Brandon, was not induced to commit the crime alleged. In addition, the State must prove beyond a reasonable doubt that in fact Duane Brandon was predisposed to commit the crime that is alleged in this case.

In considering these elements, evidence of predisposition must come before the oovernment initiated its olan to induce the defendant to commit a crime for the purposes of prosecution. Accordingly, statements made by the defendant, Duane Brandon, during the period of time that Roger Gorham had a body wire is not sufficient evidence to show predisposition as a matter of law.

(Emphasis added). According to Brandon, the court committed reversible error by proffering instructions which did not require the State to show that Brandon was "predisposed to commit the

9

illegal acts prior to the initial contact by government agents." United States v. Mkhsian (9th Cir. 1993), 5 F.3d 1306, 1310 (citing Jacobson v. United States (1992), 503 U.S. ___, ___, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174, 184).

The State asserts that Brandon's proposed instruction is argumentative and unsupported by the case law he cites. The State characterizes the phrase, "predisposition must come before the government initiated its plan to induce the defendant to commit a crime for the purpose of prosecution," as another attempt by Brandon to present his argument to the jury.

Instruction No. 18, regarding the defense of entrapment, provided:

> You are instructed that the issue of entrapment has been raised in this case. When a person has no previous intent or purpose to commit a crime, but is induced or persuaded by law enforcement officers or their agents to commit this crime, he is the victim of entrapment and the law, as a matter of policy, forbids his conviction in such case. On the other hand, where a person already has the readiness and willingness to engage in a crime, the mere fact that law enforcement officers or their agents provided what appears to be a favorable opportunity is not entrapment. The law, however, does not permit law enforcement officers or their agents to originate or implant the criminal design in the defendant's mind.
>
> Therefore, if you should find beyond a reasonable doubt from the evidence in this case that before anything at all occurred respecting the alleged offense, in this case solicitation, the defendant was ready and willing to commit such a crime, then you should find that the defendant is not a victim of entrapment.
>
> If the evidence in this case leaves you with a reasonable doubt that the defendant had the previous intent or purpose to commit the offense of solicitation except for inducement or persuasion of some law enforcement officer's agent, then it is your duty to find him not guilty. The burden is upon the State to prove beyond a reasonable doubt that the defendant was not entrapped.

10

Instruction No. 19 read:

> You are instructed that you may find the defendant was entrapped if you find each of the following:
> (1) That criminal intent or design originated in the mind of the police officer or informer: and
> (2) That there was an absence of criminal intent or design originating in the mind of the accused; and
> (3) That the defendant was lured or induced into committing a crime he had no intention of committing.

In addition, Instruction No. 20 provided:

> You are instructed that a person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this defense is not available if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated.

As **Brandon** correctly asserts, these instructions do not comport, in whole, with the requirements of Mkhsian. See Mkhsian, 5 **F.3d** at 1310-11. Specifically, Instruction No. 18 contains the phrase:

> where a person already has the readiness and willingness to engage in a crime, the mere fact that law enforcement officers or their agents provided what appears to be a favorable opportunity is not entrapment.

That phrase, used in Jacobson, was rejected by the court in Mkhsian because it wrongly permitted the jury to reject the entrapment defense:

> The instruction given by the district court that it is not possible to entrap **"a** person [who] already has the readiness and willingness to break the **law"** does not conform to Jacobson's requirements. "Already" does not necessarily mean **"before** the [g]overnment intervened":  indeed, it could mean, for example, that even **"if** [Mkhsian] was not initially disposed to [buy] drugs, he could . . . develop such a disposition during the later **course"** of interacting with Stanton (citation omitted). So interpreted, the instruction does not correctly state the law.

11

<u>Mkhsian,</u> 5 F.3d at 1311.

We must determine, then, whether inclusion of the phrase rejected in <u>Mkhsian</u> is reversible error. See United States v. Montoya (9th Cir. 1991), 945 F.2d 1068, 1074. We hold that the error was harmless because: 1) additional language in Instruction Nos. 18, 19 and 20 make it clear that Brandon was not entrapped if criminal intent originated in his mind rather than that of the police or Gorham; and 2) Instruction No. 18 was not identical to the instruction rejected in <u>Mkhsian.</u>

For future reference when instructing on the defense of entrapment, Montana courts shall not include in any entrapment instruction the phrase

> where a person already has the readiness and willingness
> to engage in a crime, the mere fact that law enforcement
> officers or their agents provided what appears to be a
> favorable opportunity is not entrapment.

We reemphasize that "it is the government's burden (once evidence of inducement is shown by the defendant) to prove that the defendant 'was predisposed to violate the law <u>before</u> the [g]overnment intervened . . . '" <u>Mkhsian,</u> 5 F.3d at 1311 (citation omitted). We suggest that be made clear in entrapment instructions.

Brandon's proposed instruction, on the other hand, is clearly argumentative. Therefore, we hold that his instruction was properly refused by the District court. See State v. Pecora (1980), 190 Mont. 115, 120, 619 P.2d 173, 175. The court's instructions fully and fairly instructed the jury on the applicable law in this case. See <u>Lundblade,</u> 625 P.2d at 548. Finally, given

12

the recent Ninth Circuit and U.S. Supreme Court decisions involving entrapment instructions, we suggest that the Attorney General review the standard entrapment instructions offered by prosecutors in Montana to ensure that such instructions comport with current federal and State law.

## II

Did the District Court err by denying Brandon's motion to dismiss and acquit on the grounds of entrapment?

In reviewing a district court's denial of a motion to dismiss based on entrapment, this Court reviews the evidence and inferences therefrom in a light most favorable to the State. State v. Kim (1989), 239 Mont. 189, 194, 779 P.2d 512, 515 (citation omitted). The decision to direct a verdict at the close of the State's case lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Graves (1990), 241 Mont. 533, 535, 788 P.2d 311, 313.

Montana's statute on entrapment, § 45-2-213, MCA, provides that

> [a] person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated.

Entrapment is an affirmative defense and the burden of proving it rests with the defendant. State v. Kamrud (1980), 188 Mont. 100, 105, 611 P.2d 188, 191 (citation omitted). Although a court may determine that entrapment exists as a matter of law, Kamrud, 611

13

P.2d at 191, the issue is one for the jury when conflicting evidence is presented. State v. McClure (1983), 202 Mont. 500, 503, 659 P.2d 278, 280.

The three elements of the entrapment defense are set forth in State v. Farnsworth (1989), 240 Mont. 328, 331, 783 P.2d 1365, 1367 (citations omitted):

> 1. Criminal intent or design originating in the mind of the police officer, or informer:

> 2. Absence of criminal intent or design originating in the mind of the accused: and

> 3. Luring or inducing the accused into committing a crime he had no intention of committing.

Brandon argues tbat Bartlett's testimony places any comments by Brandon in the "proper perspective." According to Brandon, testimony by Gorham and Officer Lynn Gillett further confirms that Brandon's notion of killing his wife was merely a joke. Brandon contends that the waiver of liability and consent forms signed by Gorham--whereby he agreed with Park County sheriffs to assist in the criminal investigation by wearing a wire and having one installed in his truck--are evidence that Gorham was to solicit Brandon to commit a crime. However,

> there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception.

State v. Karathanos (1972), 158 Mont. 461, 470, 493 P.2d 326, 331.

The State's motion for leave to file the information against Brandon illustrates that the idea to kill Patsy originated with Brandon, not with Gorham: "Mr. Gorham told Sheriff Johnson that

14

the defendant had contacted him for the second time and asked Gorham to kill defendant's wife, Patsy Brandon." The jury heard conflicting evidence as to where the criminal intent originated, and made its determination. The record supports the jury's rejection of the defense of entrapment.

During their first recorded conversation, Gorham suggested that Brandon might have second thoughts. Brandon's response confirmed that the idea of killing Patsy originated with Brandon:

> BRANDON: No, [expletive]. You, you know, I give you the second [expletive] chance. I asked you, do you want to be sure 'bout that? [Expletive], I was on your doorstep. I, I had it all lined out . . . [expletive], I'm serious.

Brandon was not lured or induced into committing a crime which he had no intention of committing. Rather, it is clear from the record that Brandon developed the murderous scheme, approached Gorham, and asked Gorham to kill Patsy. Applying the Farnsworth standard to this case, and viewing the evidence in the light most favorable to the State, we conclude that the District Court did not abuse its discretion by denying Brandon's motion for entrapment.

III

Did the District Court err by restricting Brandon's cross-examination of the informant?

Brandon contends that the District Court improperly restricted his cross-examination of Gorham. He claims he should have been allowed to question Gorham about a restraining order against Gorham, which was issued in an unrelated civil action with Gorham's insurance company. The State objected on the grounds that the evidence was irrelevant. The objection was sustained and the jury

15

was ordered to disregard the question.

Part of Brandon's defense at trial was that Gorham had asked him to burn Gorham's house down so Gorham could collect the fire insurance benefits. According to **Brandon,** he refused, and after Gorham or someone else burned the house down, Gorham had a motive to entrap **Brandon** in criminal activity in order to keep **Brandon** from revealing Gorham's earlier request for assistance in the scheme.

**Brandon** argues that the line of questioning regarding the restraining order went to Gorham's credibility. The State, on the other hand, contends that evidence regarding a restraining order in an unrelated civil action is irrelevant and prejudicial. After a careful review of the record, we determine that **Brandon** failed to establish that his defense was restricted or that the evidence would have operated to impeach Gorham's credibility.

**Brandon** further contends that the District Court erred by refusing his proposed exhibits, which, he asserts, tended to prove that Gorham concealed himself to avoid testifying at trial. The exhibits were the State's motion for a continuance and two affidavits of the deputy county attorney which indicated that officers were unable to locate Gorham, that the State believed he had fled Montana, and that the State believed he was attempting to elude law enforcement officers.

**Brandon** called Deputy County Attorney Jon Hesse to the stand during his case-in-chief. Hesse testified that he filed the motion because he did **not** know where Gorham was prior to trial and thought

16

that **Brandon** and Gorham might be acting in concert to ensure that Gorham would be unavailable for trial. He further testified that his understanding that Gorham had not contacted the sheriff's office was incorrect. In fact, Gorham had called the sheriff's office. Gorham was later located in Bozeman. After assuring prosecutors he would be available for all proceedings, he was released without bail.

The District Court refused Brandon's exhibits on the grounds that they were irrelevant. The court also concluded that they were cumulative, since Mr. Hesse had testified about the contents of the documents and the whereabouts of Gorham before trial. It is apparent that Brandon--in an effort to impeach **Gorham's** credibility--was able to present evidence of the State's prior belief that Gorham had fled. Sufficient evidence was before the jury from which **Brandon** could attack the credibility of Gorham, who testified, on these areas. **Brandon** has not established that the District Court abused its discretion by restricting his **cross-**examination or by refusing his proffered exhibits. See State v. **McNatt (1993),** 257 Mont. 468, 474-75, 849 **P.2d** 1050, 1054.

IV

Did the District Court err by refusing to admit Brandon's statement to police into evidence?

Following his arrest, **Brandon** was interviewed by Park County Sheriff Charley Johnson. During trial, **Brandon** moved to admit into evidence Proposed Exhibit I, a transcript of the statement he had given to Sheriff Johnson. The State objected to the exhibit

17

because it was inadmissible at that time. The court withheld ruling on the matter. The following day at trial, **Brandon** again offered Exhibit I. The District Court refused its admission. Later in chambers, defense counsel urged the admission of Exhibit I. The State objected on the grounds that the statement was hearsay, self-serving, and not subject to cross-examination because **Brandon** had not testified. The exhibit was refused.

**Brandon** argues that the statement should have been admitted under Rule 801(d)(1)(B), M.R.Evid., because, as a prior statement by a witness, it was not hearsay and was properly "offered to rebut an express or implied charge against the declarant of subsequent fabrication, improper influence or motive." However, before prior statements qualify for admission under the rule, the declarant must testify and be subject to cross-examination. State v. Scheffelman **(1991),** 250 Mont. 334, 338, 820 **P.2d** 1293, 1296 (citation omitted).

In this case, **Brandon** had not testified at the time the statement was offered. Therefore, **Brandon's** statement was not subject to cross-examination. Because the exhibit was not offered after **Brandon** testified, it appears that **Brandon** was attempting to place his unsworn testimony before the jury without taking the witness stand. Brandon's pretrial statement was clearly inadmissible under Rule 801, M.R.Evid. The District Court did not abuse its discretion by refusing into evidence Brandon's pretrial statement to police. See Steer, Inc. v. **Dep't** of Revenue (1990), 245 Mont. 470, 475, 803 **P.2d** 601, 604.

V

18

Did the District Court err by refusing Brandon's motion for a change of venue?

On March 5, 1992, **Brandon** moved the District Court for a change of venue on the grounds of prejudicial pretrial publicity. **Brandon** was concerned that he would not receive a fair trial in Park County. In support of his contention, **Brandon** attached to his affidavit several news articles about the alleged offense. The court held oral argument on his motion on November 12th and denied the motion on November 19, 1992.

An accused is entitled to a change of venue when there are reasonable grounds to believe that a prejudicial atmosphere exists within the present venue which creates a reasonable apprehension that he cannot receive a fair trial. State v. Palmer **(1986),** 223 Mont. 25, 29, 723 **P.2d** 956, 959. To be granted a change of venue based on prejudicial pretrial publicity, **Brandon** must show: 1) that the news reports complained of were inflammatory: and 2) that the publication of articles actually inflamed the prejudice of the community to an extent that a reasonable possibility exists that he may not receive a fair trial. See State v. Ritchson **(1982),** 199 Mont. 51, 54, 647 **P.2d** 830, 832. Inflammatory news articles are characterized by

> editorializing on the part of the media or any calculated attempt to prejudice public opinion against [the defendant] or to destroy the fairness of the pool from which his prospective jurors would be drawn.

State v. Armstrong **(1980),** 189 Mont. 407, 423, 616 **P.2d** 341, 350.

During voir dire, **Brandon** unsuccessfully attempted to establish that the news articles inflamed the prejudice of the

19

community or that the jurors harbored any opinions about Brandon's guilt. Of the twenty-six panel members questioned by defense counsel, eighteen had read something about the case and eight had read nothing about the case. Notably, however, defense counsel did not challenge any of the jurors for cause.

Brandon further claims that his argument is bolstered because many of the potential jurors read a news article printed on the Friday immediately preceding the Monday trial date. However, Brandon did not renew his motion for a change of venue based on the Friday article.

After a thorough review of the record, we determine that the newspaper articles were factual and void of editorializing. Moreover, Brandon failed to demonstrate through voir dire, or at any other time, that the news reports were inflammatory or that they inflamed the prejudice of the community such as to warrant a change of venue. Denial of a motion for change of venue is not reversible error in the absence of an abuse of discretion by the trial court. State v. Smith (1986), 220 Mont. 364, 377, 715 P.2d 1301, 1309. We hold that the District Court did not abuse its discretion in denying Brandon's motion for a change of venue.

Affirmed.

_____
Justice

20

We concur:

_William E. Hunt Sr._

_Karla M. Gray_

Justices

March 22, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Charles F. Moses, Esq.
Moses Law Firm
P.O. Box 2533
Billings, MT 59103

Hon. Joseph P. Mazurek, Attorney General
Cregg Coughlin, Assistant
Justice Bldg.
Helena, MT 59620

Wm. Nels Swandal
County Attorney
Park County Courthouse
Livingston, MT 59047

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy