No. 12574

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE STATE OF MONTANA, ex rel
CHARLES E. HAMLIN, JR.,

Relator,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and
For the County of Lewis and Clark, and the
HONORABLE PETER G. MELOY, Presiding Judge,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Robert J. Sewell, Jr., argued, Helena, Montana

For Respondents:

Thomas F. Dowling, County Attorney, Helena, Montana
Leif B. Erickson, Deputy County Attorney, argued,
Helena, Montana

---

Submitted: September 28, 1973

Decided: OCT 9 - 1973

Filed: OCT 9 - 1973

Thomas J. Kearney
_____ Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an original application for supervisory control to review and annul an order of the district court refusing to dismiss a criminal charge against relator.

Relator is Charles E. Hamlin, Jr., against whom an Information was filed in the district court of Lewis and Clark County before the Hon. Peter G. Meloy, district judge. Relator was charged with the criminal sale of LSD, a dangerous drug, on May 30, 1973. Relator moved to dismiss the Information on the ground of entrapment as a matter of law. At the hearing on the motion, relator examined Merritt Everett, a deputized undercover agent of the sheriff's office, whose testimony furnished the factual background of events leading to the arrest and charge against relator.

Everett testified that he came to Helena on May 29, 1973, at the request of the Lewis and Clark County sheriff's office to assist with the drug problem. Deputy Sheriff DeBree discussed the drug problem with Everett and showed him a list of drug dealers and pushers in Helena, some mug shots identifying them, and was given the names of some of the places that should be checked out for illegal narcotics activity. Neither relator's name nor picture was contained therein, nor was relator discussed in any of the conversation.

During the late afternoon and evening of May 29 Everett checked two locations in Helena for illegal drug activity without result and finally, at the suggestion of Deputy Sheriff Debree, went to a bar in East Helena arriving there about 12:45 a.m. on May 30. At no time up to this point had relator's name been mentioned nor had Everett met relator.

Shortly after arriving at the East Helena bar Everett went over to a table where relator was sitting, bought him a drink, and asked him if he knew where Everett could get some "stash". Relator

answered, "Yes, I can make a phone call, maybe I can get you a couple lids of marijuana." Relator went to a pay phone in the bar, made a phone call, returned to the table and told Everett there was nobody at the house he called. Everett said nothing. Everett bought relator another drink. Relator then said, "I know a place we can go that they might have some." Everett said "All right", relator said "Follow me". Everett told relator what motel he was staying in and each drove his respective car to this motel. Relator parked his car there, got in Everett's car and directed him to a house on Rodney where they might possibly get some dope. On the way there relator named another place they could probably get some dope, if they were unsuccessful at the house on Rodney. Everett said that would be all right.

They arrived at the house on Rodney street at about 2:35 a.m. They got out of the car, knocked on the door and asked the man who answered if he had anything to smoke or weed to sell. The man said no, but he had some acid. Relator introduced Everett to this man, Everett paid him $2.00, got a pill, asked for a drink of water and pretended to take the pill. Other persons in the room appeared "starry-stoned on acid" to Everett. The man who originally answered the door asked if anyone else wanted any more acid and everybody, including Everett, said "yes". Relator and the man left the house, returned about ten minutes later, and distributed some acid to the others, including Everett.

Everett and relator left the house about 5:30 a.m. and returned to the motel where Everett was staying and where relator's car was parked. Later in the morning relator returned armed to Everett's motel room, Everett pulled out his pistol, ordered relator to lie on the floor, and placed him under arrest.

On the basis of this testimony, Judge Meloy entered an order denying relator's motion to dismiss the Information, which included a rather detailed rationale of his decision. Here, we note that numerous "facts" are stated in relator's brief which are not substantiated by the record before us and therefore cannot be considered by this Court.

Relator then filed the instant proceedings in this Court seeking supervisory control to review and annul the order of the district court. The matter came on for adversary hearing before this Court and/at the conclusion thereof was taken under advisement.

The single issue for determination is whether the Information should be dismissed on the ground that the defense of entrapment has been established as a matter of law.

At the outset we observe that any defense capable of determination without trial of the general issues may be raised before trial by motion to dismiss. Section 95-1701, R.C.M. 1947. The state concedes that entrapment, if established, is a complete defense to the charge against relator. Relator acknowledges the truth of Everett's testimony for the purpose of the motion. Neither party contests review of the district court's order by supervisory control.

We hold that Everett's testimony does not establish entrapment as a matter of law. Reduced to its essentials, the testimony simply shows that Everett bought relator a couple of drinks, inquired if relator knew where Everett could get some narcotics, and followed relator's lead thereafter. A casual offer to buy unaccompanied by pleading, begging or coercing of the accused does not constitute entrapment. State v. Harney, ____Mont.____, 499 P.2d 802, 29 St.Rep. 627. Everything that happened after the initial solicitation in the East Helena bar was conceived and initiated by relator with no more than passive participation by Everett, culminating in the procuring and distribution of LSD pills to the occupants of the house on Rodney street by relator and another.

Relator argues that where, as here, the law enforcement officers have no prior knowledge or suspicion that an individual has a propensity to commit a dangerous drug offense and implant the idea of committing such crime in his mind, they are in fact inducing him to commit a crime he had no intention of committing

- 4 -

thereby establishing the defense of entrapment. Whatever may be said of this contention as an abstract statement of the law, the testimony here falls far short of establishing _as a matter of law_ that Everett implanted the idea that relator and another should procure and sell LSD pills to himself and other occupants of the house on Rodney street in the early morning hours of May 30.

We repeat the three essentials of the defense of entrapment: (1) Criminal intent or design originating/in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. State v. Karathanos, 158 Mont. 461, 493 P.2d 326. In the instant case, the establishment of such defense must await trial and resolution by the jury of the factual issues of intent and inducement under proper instructions.

Because this matter is returned to the district court for jury trial, a final matter requires comment. To the extent that the ruling of the district court may be interpreted to indicate that force or coercion is required to establish entrapment, the opinion accompanying the ruling should be clarified. A luring or inducement of the accused to commit a crime he had no intention of committing, whether by force and coercion or by other means, coupled with the other requirements of _Karathanos_ is the correct rule to be followed in the trial of this case.

The application for supervisory control is denied.

_____
Justice

- 5 -

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. R. D. McPhillips, District
Judge, sitting for Justice John
Conway Harrison.

- 6 -