No. 13165

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

GREGORY ALLEN GRENFELL,

     Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial
              District
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        J. Brian Tierney argued, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
         Montana
        Gary Winston argued, County Attorney, Butte,
         Montana
        Nadine Scott argued, Butte, Montana

---

                     Submitted: January 12, 1977

                       Decided: **MAY 11 1977**

Filed: **MAY 11 1977**

*Thomas J. Kearney*
                            Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant Gregory Grenfell was convicted on one of four counts of selling dangerous drugs in violation of section 54-132, R.C.M. 1947, in the district court, Silver Bow County. He was sentenced to 10 years in prison. Defendant raises several issues in this appeal but only the issue of entrapment is necessary for the decision in this case. He claims there was entrapment as a matter of law. We agree.

The charges against Grenfell arose in Butte, Montana, from four sales of drugs to Bill Verrall, an informer for the Silver Bow County sheriff's department, on January 26, 27, 28, and 29, 1975. Grenfell and Verrall met in the fall of 1974. Thereafter Verrall and his wife cultivated a close friendship with Grenfell and his wife.

The facts show Verrall was a frustrated and unfulfilled policeman having drifted from job to job over a period of several years. He started as a Montana State Prison guard but was terminated after six months. His employment with the Butte police force in 1971 was terminated before his probationary (six month) period expired. Verrall then went to the state of Washington and there worked for the King County highway patrol as a private security guard, but left after only one week. In 1973 he was a police officer for Boulder, Montana, but left after only four months employment, during which he was officially charged with assault while on duty. Verrall then drifted back and forth from Montana to the state of Washington, not having any steady job and drawing periodic welfare assistance for himself and family.

Verrall's interest in being a deputy sheriff for Silver Bow County dates back to 1969 when he asked the then sheriff for a job as a deputy but was refused. In 1974, when a new sheriff was elected, but before he took office, Verrall approached him and told him that he would buy drugs for him. At the time of the incidents involved in this case, Verrall had filed an application to be a deputy sheriff for Silver Bow County, and although he had not been officially hired, he was working as a drug purchaser for the sheriff's office.

On January 26, 1975, Verrall called Grenfell and asked him for marijuana. Grenfell testified he suggested beer instead, but Verrall said he was "uptight" and needed marijuana. Grenfell went to a local tavern and inquired about two men he had worked with and knew to be involved with drugs. After learning they lived in a trailer court in the "Country Club area", he obtained some hashish and gave it to Verrall. Verrall later delivered the hashish to the sheriff. This transaction comprised count one of the Information, on which Grenfell was acquitted.

On January 27, 1975, Verrall called Grenfell's home many times. Grenfell at first told his wife to tell Verrall he was not at home. Later, Grenfell returned the call. Verrall told him the hashish gave him a good night's sleep and he had a friend who wanted some LSD. Grenfell said he did not know where to get LSD, but he would talk to the men who gave him the hashish. He obtained $20 from Verrall and bought $10 worth of LSD from his suppliers. Grenfell gave the LSD and the $10 change to Verrall. Verrall delivered the LSD to the sheriff. These events were the basis for count two of the Information, on which Grenfell was acquitted.

On January 28, 1975, Verrall drove to Grenfell's home and asked Grenfell to work on his automobile. At that time a "partnership" was discussed whereby they would purchase a large quantity of LSD to sell to Verrall's friend at a profit to finance a trip to Utah to obtain work. (Verrall promised Grenfell he could get him a job in Utah with a mining company and had even helped him fill out the application forms). Grenfell then went to his suppliers in the trailer home to ask the price of LSD if bought in bulk. He obtained some hashish and amphetamines which he later gave to Verrall. The "big buy" was set for January 29, 1975. These events comprised count three of the Information, on which Grenfell was acquitted.

After Verrall left, Grenfell returned to the suppliers and obtained a small amount of hashish for his own use.

The ultimate objective of the sheriff's office was to catch the suppliers to Grenfell, although this was never accomplished due to a failure of the sheriff's office to follow Grenfell to the trailer home where the suppliers lived.

On the morning of January 29, 1975, Grenfell, knowing this was the day of the "big buy", was nervous and reluctant to go through with the purchase. He tried to smoke the hashish he had purchased the night before, but it hurt his throat. Verrall tried to calm him down during a telephone conversation by assuring Grenfell everything would be all right and telling him they needed the money for the trip to Utah.

Verrall arrived at Grenfell's home that afternoon with $900. The bills had been photocopied and the serial numbers recorded by the sheriff's office. Grenfell's home was under surveillance.

Verrall gave Grenfell $475 of the $900. Grenfell left and made a purchase of 320 LSD pills. (The sheriff's office failed in its assignment to follow Grenfell and catch his suppliers).

When Grenfell returned to his home he gave the LSD pills and $43 in change to Verrall. They split the rest of the $900 equally. As Verrall left with the pills, he signaled the sheriff's deputies who quickly arrested Grenfell. This final transaction, a transfer of the pills from Grenfell to Verrall, comprised count four of the Information. Grenfell was convicted on this count. He appeals.

Montana's entrapment statute, section 94-3-111, R.C.M. 1947, provides:

"A person is not guilty of an offense if his conduct is incited or induced by a public servant, or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent, merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated."

This statute is consonant with earlier decisions of this Court which set forth the following elements of entrapment: (1) Criminal intent or design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. State ex rel. Hamlin, Jr. v. District Court, 163 Mont. 16, 515 P.2d 74; State v. Karathanos, 158 Mont. 461, 493 P.2d 326.

The record shows Grenfell was not predisposed to commit this offense. There was no evidence that prior to January 26, 1975, Grenfell had ever used or sold drugs. Grenfell's close friendship

- 5 -

with Verrall spanned approximately six months, yet Verrall testified that Grenfell never offered to sell him drugs. The one time Grenfell admitted trying to smoke hashish he said he quit because it hurt his throat.

This is not like State v. Harney, 160 Mont. 55, 499 P.2d 802, where the drug informer made only a casual offer to buy drugs from the defendant. Here, the entire scheme originated in Verrall's mind. His telephone call to Grenfell on January 26, 1975, was the beginning of four consecutive days of persistent efforts to involve Grenfell in drugs, solely for the purpose of gathering evidence against him. Whenever Grenfell showed reluctance, Verrall coaxed him with visions of Verrall's personal need and Grenfell's need to have money to travel to Utah to find a job. Had it not been for Verrall's creative activities, this offense would never have been committed.

The conviction is reversed and ordered dismissed.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
Justices.

- 6 -