JUSTICE WEBER
delivered the Opinion of the Court.
Kyong Cha Kim was convicted by jury of prostitution, a misdemeanor, and promoting prostitution, a misdemeanor, in the Fourth Judicial District Court, Missoula, Montana. Ms. Kim was sentenced to six months on each count, to be served in the Missoula County Jail, the sentences to be served consecutively. Both sentences were suspended. Ms. Kim was also fined $500 on each count. From these convictions, Ms. Kim appeals. We affirm.
1. Did the District Court err in denying defendant’s motion to dismiss based on entrapment?
2. Did the District Court err in denying defendant’s motion to suppress certain evidence obtained through a consent to search warrant?
In the fall of 1987, Ms. Kim moved to Missoula, Montana, where she opened a sauna massage business named the Crossroads Sauna. Shortly after the business opened the Missoula County Attorney’s office began receiving complaints about prostitution at the business.
In October 1987, the county attorney’s office began an investigation into the activities of the Crossroads Sauna. Initially, on October 21, 1987, two detectives, posing as truck drivers, went to the sauna. A female employee of the sauna showed them the facilities and explained that the sauna offered a $40, $60 and $100 massage. Both officers testified that when they asked what the $100 massage in- *192 eluded, they were told it included “everything.” The detectives did not request a massage during that visit. They returned on November 10, 1987, and on this visit they spoke directly to Ms. Kim who told them only the $100 massage was available. However, when the officers refused to pay $100, Ms. Kim said they could receive the $40 massage. Both detectives were then asked to sign a form acknowledging that they would not give anything of value for any sexual conduct. The detectives testified that the $40 massage consisted of a sauna, a shower, and a back rub by Ms. Kim and another employee.
During that same visit the two detectives asked Ms. Kim about holding a bachelor party for a friend at the Crossroads Sauna. Ms. Kim agreed to the party. She stated, however, that each member of the party must receive the $100 massage. When the detectives asked her what this included she said it included “everything,” and that she would teach the groom how to make love to his new wife.
On November 19, 1987, six deputies and a deputy county attorney arrived at the Crossroads Sauna for the purported bachelor party. They brought beer with them and on the way there each had consumed a beer or less in order to appear to be partying. One officer carried a gun. Ms. Kim and two female employees admitted the officers. A fourth woman was on the premises but never became involved with the party.
The men were escorted to a room where the groom was given a bottle of champagne, and seated on a chair. The officers testified that the two employees sat on his lap and began to unbutton his shirt and take off his belt. An officer and the deputy county attorney then began talking to Ms. Kim outside the room. Conflicting testimony was presented as to who initiated conversation about sexual intercourse, however, the officers testified that when they asked Ms. Kim about protection, she assured the officers that she had “rubbers.” The negotiations ended with an agreement that for the $100 each, the groom would have sex with all three women, and the other members of the party would each have sex once. The officers testified that this conversation was carried on in a quiet and businesslike manner.
After this conversation, Ms. Kim was arrested and handcuffed, as were the two employees. They were given Miranda rights. While one employee became very upset and had to be physically subdued, the officers testified that Ms. Kim and the other employee were cooperative and composed. Ms. Kim was asked if she would sign a consent form, allowing the officers to search the premises. She agreed to sign *193 the form and a search was conducted. During the search Ms. Kim showed the officers where boxes of condoms were stored in her freezer. A later count revealed that this supply included 334 condoms. Ms. Kim entered pleas of not guilty to prostitution and promoting prostitution.
Ms. Kim was tried by jury in Justice Court on May 26, 1988, and a verdict of guilty was returned on both counts. Ms. Kim then appealed to District Court. She moved for dismissal, alleging the affirmative defense of entrapment. She also moved to suppress the evidence seized during the search. The hearing on these motions was held on September 29-30, 1988, and the court denied both motions. Ms. Kim was tried by jury on October 26-28, 1988, and the jury returned a verdict of guilty on each count.
I.
Did the District Court err in denying defendant’s motion to dismiss based on entrapment?
As a pretrial motion, Ms. Kim moved to dismiss the charges against her based on the affirmative defense of entrapment. The court’s hearing on this motion included testimony from numerous witnesses, including Ms. Kim and her employees, and witnesses for the State. The court denied this motion.
Initially, the State contends that the defense of entrapment is not available to a defendant who denies committing the acts for which she is charged, citing State v. Kamrud (1980), 188 Mont. 100, 103-04, 611 P.2d 188, 190. See also State v. O’Donnell (1960), 138 Mont. 123, 354 P.2d 1105; State v. Parr (1955), 129 Mont. 175, 283 P.2d 1086. In the present case, Ms. Kim pled not guilty to both the charge of prostitution and the charge of promoting prostitution. Thus, the State contends that Ms. Kim was not entitled to assert this defense. However, because the District Court heard testimony on this motion we will review the defense on its merits.
Entrapment is an affirmative defense available to a criminal defendant, and is codified in § 45-2-213, MCA, as follows:
“A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated.”
*194 The elements of this defense were further explained by this Court in State v. Hanley (1980), 186 Mont. 410, 414, 608 P.2d 104, 106, wherein we enumerated the elements of entrapment as follows:
“(1) criminal intent or design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; (3) luring or inducing the accused into committing a crime he had no intention of committing. See State v. Grenfell (1977), 172 Mont. 345, 564 P.2d 171; State ex rel. Hamlin v. District Court (1973), 163 Mont. 16, 515 P.2d 74; State v. Karathanos, supra.”
The burden of establishing entrapment rests on the defendant. A court may determine that entrapment exists as a matter of law. Kamrud, 611 P.2d at 191; State v. Grenfell (1977), 172 Mont. 345, 564 P.2d 171. However, if there are conflicting facts, the issue is properly submitted to a jury. State v. McClure (1983), 202 Mont. 500, 503, 659 P.2d 278, 280. Additionally, in reviewing the denial of a motion to dismiss based on entrapment, this Court will view the evidence and inferences in a light most favorable to the State. State v. Merrill (1979), 23 Wash.App. 577, 597 P.2d 446.
Ms. Kim contends that entrapment was established as a matter of law, requiring dismissal of the charges. Ms. Kim contends that the criminal intent originated in the minds of the law enforcement officers, that she had no intent herself to commit the crime, and that she was induced to commit the crime. Ms. Kim relies on the cases of Kamrud and Grenfell in support of her contention. Having reviewed the evidence and the elements of this defense, we conclude that entrapment did not exist as a matter of law.
At the hearing, the officers testified that on the evening of the party, two of the women employees sat on the lap of the “groom,” and began to unbutton his shirt and undo his belt buckle. No testimony suggested that these women were induced to begin these actions. Additionally, the testimony by law enforcement personnel indicated that Ms. Kim did not have to be induced to participate in discussions about sexual intercourse for pay. Instead, their testimony emphasized that Ms. Kim was totally agreeable to negotiations regarding sex, and that she was prepared to supply “protection” in the form of condoms. In response, Ms. Kim denied that she agreed to provide sex. She testified that she was supposed to “tease” the “groom,” and that any references to sexual acts was all a part of the joke. This evidence regarding the defense of entrapment was properly submitted to the jury.
*195 Ms. Kim relies on this Court’s decisions in Kamrud and Grenfell to support her contention that the court should have found entrapment as a matter of law. These cases are distinguishable in several respects, however.
In Grenfell an informant became a friend of the defendant over a period of six months and “persistently requested” help from the defendant in procuring drugs. In concluding that entrapment had occurred, this Court stated, “The record shows Grenfell was not predisposed to commit this offense.” Grenfell, 564 P.2d at 173.
In Kamrud, law enforcement officers induced the defendant to obtain drugs for them. As inducement to commit the crime, the officers used marijuana themselves in the presence of defendant, they became friendly and held parties to ingratiate themselves with defendant. There was no evidence that Mr. Kamrud had sold drugs in the past, or that the idea of selling the drugs originated with Mr. Kamrud. In Kamrud the officers violated the law themselves by using and giving away marijuana. In concluding that entrapment was established as a matter of law, this Court stated:
“ ‘In short, there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception . . . State v. Karathanos (1972), 158 Mont. 461, 493 P.2d 326, 331 Kamrud, 611 P.2d at 191.
Comparing the present case to the facts of Kamrud and Grenfell, this controlling distinction is apparent. This is not a case where there was no suggestion of criminal activity prior to the investigation. The investigation was initiated because of citizen complaints. In the present case the law enforcement officers set a trap. However, the evidence, including the testimony of the officers, and the large supply of condoms, indicated that Ms. Kim did not have to be induced to participate in discussions about sexual intercourse. There was substantial credible evidence to support a finding that criminal intent originated with Ms. Kim. Understandably, the District Court refused to find that as a matter of law Ms. Kim lacked criminal intent, or was induced to commit the crime. These determinations were properly left for the jury. We affirm the District Court’s denial of Ms. Kim’s motion to dismiss.
II.
Did the District Court err in denying defendant’s motion to sup *196 press certain evidence obtained through a consent to search warrant?
Immediately following her arrest, Ms. Kim signed a consent to search which allowed the officers to search the Crossroads Sauna. Ms. Kim claims that her consent was not voluntary under the totality of the circumstances, citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. She contends that the court erred in denying her motion to .suppress evidence obtained as a result of this search. At the hearing on this motion the District Court heard testimony about how the consent was obtained, and other relevant evidence. The court denied Ms. Kim’s motion to suppress.
The right to be free of an unreasonable search and seizure is guaranteed by the Fourth Amendment to the United States Constitution, and is made applicable to the states through the Fourteenth Amendment. One may however, consent to a search as long as that consent is proved by clear and convincing testimony and as long as it is established that the consent was not coerced. The State has the burden of showing that the consent was voluntary. Voluntariness is a factual issue and is determined from the totality of the circumstances. Schneckloth, 412 U.S. at 248-49, 93 S.Ct. at 2058-59.
On appeal, our standard of review when considering a court’s ruling on a motion to suppress, is whether the record contains substantial credible evidence to support the district court’s findings, and whether those findings were applied correctly as a matter of law. State v. Beach (1985), 217 Mont. 132, 147, 705 P.2d 94, 103. “The credibility of the witnesses at a suppression hearing is properly determined by the trial court that heard testimony and observed the witnesses.” The trial court is the finder of fact in a suppression hearing. State v. Kirkaldie (1978), 179 Mont. 283, 289-90, 587 P.2d 1298, 1302-03.
Ms. Kim urges that her consent was not voluntary for the following reasons. She emphasizes that she was handcuffed and in the custody of seven male law enforcement officers. She notes that she is only five feet tall, and weighs only 100 pounds. She alleges that she was intimidated because one of her employees had to be physically subdued. Ms. Kim alleges that the officers threatened to “tear the place apart” if she did not sign the consent form. She alleges that one of the officers pointed a gun at one of her employees. Ms. Kim also claims her Korean descent and lack of familiarity with American processes made her vulnerable to the officers’ requests.
*197 Ms. Kim signed the form approximately twenty-five minutes after she was arrested and approximately fifteen minutes after she witnessed the scuffle with her employee. At the time she signed, her handcuffs had been removed, and she was seated, drinking a pop and smoking. The officers testified that they read the form to Ms. Kim twice and that she also read it herself. The officers denied making any threats about “tearing the place apart.” Only one officer was carrying a gun, and he testified that he held the gun at his side for less than a minute while the arrests were being made, then put it away. He testified that he never pointed it at anyone.
While custody is a factor in the totality of the circumstances test, it does not necessarily negate consent. State ex rel. Kotwicki v. District Court (1975), 166 Mont. 335, 344, 532 P.2d 694, 699. Additionally, Ms. Kim’s background belies her contention that she lacked understanding of the proceedings. Testimony at the hearing established that Ms. Kim is an American citizen who has owned several businesses in America. In the past she has worked with sheriff and police departments as an interpreter. She has also worked as an interpreter in courtrooms and in jails.
The court had the opportunity to hear the witnesses, judge credibility, and weigh the evidence. The court determined that under the totality of the circumstances, the State’s evidence was clear and convincing that Ms. Kim’s consent was obtained voluntarily.
Ms. Kim also contends that the scope of the search exceeded the scope of the consent. She claims that the kitchen and office were not included in her consent. There is no merit to this claim because the consent form clearly authorized a search of Ms. Kim’s “Premise Business located at Crossroads Sauna/Wye.” Additionally, one officer testified at the hearing that he explained to Ms. Kim that “every room in the entire establishment would be searched.” Ms. Kim herself then directed the officers to the kitchen and showed them where the condoms were stored. We affirm the District Court’s denial of Ms. Kim’s motion to suppress.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON and GULBRANDSON concur.