No. 03-318

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 364

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

RONNIE LEE REYNOLDS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and for the County of Chouteau, Cause No. DC 2002-14
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Randy H. Randolph, Attorney at Law, Havre, Montana

    For Respondent:

        Honorable Mike McGrath, Montana Attorney General, Ilka Becker, Assistant Attorney General, Helena, Montana; Cyndee L. Peterson, Hill County Attorney, Havre, Montana

Submitted on Briefs:  December 30, 2003

Decided:  December 21, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Ronnie Lee Reynolds (Reynolds) was charged with Driving Under the Influence, 4th or Subsequent Offense, Felony, Driving While License Suspended or Revoked, 9th Offense, Misdemeanor, and Operating a Motor Vehicle Without a Valid Policy of Liability Insurance, 1st Offense, Misdemeanor. He moved to have the charges dismissed on the grounds that officers with the Chouteau County Sheriff's Office (Sheriff's Office) had entrapped him. The District Court denied the Motion. Reynolds appeals. We affirm.

**ISSUE**

¶2    The issue before this Court is whether the District Court erred when it denied Reynolds' Motion to Dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    Around 1 p.m. on August 29, 2002, the bartender at Dominick's Eatery and Saloon in Carter, Montana, called the Sheriff's Office to report that Reynolds was drunk and causing a disturbance at the bar. Two officers were dispatched. Upon arriving at the bar, the officers first questioned Reynolds about his health to confirm that his behavior was not the result of a medical condition. Upon concluding that Reynolds was intoxicated rather than ill, they conducted a background check and discovered that his driver's license had been revoked.

¶4    The officers told Reynolds repeatedly that he should not drive because he was intoxicated and had no valid license. In the presence of the officers, Reynolds voluntarily gave his keys to the bartender and indicated that he had arranged for a ride. The bartender

2

told Reynolds he could stay until his ride arrived or until he was sober providing he did not bother the other customers. She offered to fix him something to eat. The officers did not arrest Reynolds or remove him from the premises, nor were they asked to do so.

¶5 Approximately two hours later, the bartender called the Sheriff's Office again. She reported that Reynolds was belligerent, causing another disturbance and demanding that she return his keys. She was concerned whether she or the bar could be held liable should she return the keys, but was also concerned for her safety and that of the cook should she refuse. The officer instructed her to return Reynolds' keys, which she did.

¶6 The officers then headed for Dominick's again. In transit, one of the officers called the bar and asked whether Reynolds had left or not. He was told that Reynolds was still in the bar. As they drove into Carter, the officers decided to wait at the top of the hill overlooking Dominick's to see if Reynolds was going to drive. Shortly thereafter, they saw a car fitting the description of Reynolds' vehicle leave the parking lot heading north out of Carter. The officers pulled into Dominick's parking lot and the bartender met them, telling them that Reynolds had just left and was heading north. The officers overtook Reynolds approximately three miles north of Dominick's. They arrested him for driving without insurance and a valid driver's license and driving while intoxicated.

¶7 On October 28, 2002, Reynolds filed a Motion to Dismiss on the grounds that the officers' conduct constituted entrapment. On November 25, 2002, the District Court denied the Motion. A jury trial was held on December 17, 2003, at the conclusion of which

Reynolds was found guilty on all counts. Reynolds appeals the District Court's denial of his Motion to Dismiss.

## STANDARD OF REVIEW

¶8 The grant or denial of a pretrial motion to dismiss in a criminal case is a question of law. This Court reviews conclusions of law to determine if they are correct. *State v. Morgan*, 1998 MT 268, ¶ 17, 291 Mont. 347, ¶ 17, 968 P.2d 1120, ¶ 17 (citations omitted). Furthermore, we have held that in reviewing a district court's denial of a motion to dismiss based on entrapment, we will review the evidence and inferences in a light most favorable to the State. *State v. Kim* (1989), 239 Mont. 189, 194, 779 P.2d 512, 515.

¶9 The defendant bears the burden of proving entrapment. *Kim*, 239 Mont. at 194, 779 P.2d at 515. However, a court may determine that entrapment exists as a matter of law. *Kim*, 239 Mont. at 194, 779 P.2d at 515 (citation omitted). If there are conflicting facts, the issue is properly submitted to a jury. *Kim*, 239 Mont. at 194, 779 P.2d at 515 (citation omitted).

## DISCUSSION

¶10 Reynolds maintains that the Chouteau County officers entrapped him into committing the crimes for which he was found guilty. Entrapment is an affirmative defense available to a criminal defendant and is codified at § 45-2-213, MCA, as follows:

> Entrapment. A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or

facility for committing an offense in furtherance of criminal purpose which such person has originated.

¶11 The State argues that the officers did not entrap Reynolds into driving his car while intoxicated and without a valid driver's license and insurance. The officers testified that they repeatedly instructed Reynolds not to drive. However, when the bartender called and told them that Reynolds was demanding his keys and she was fearful for her safety and the safety of her co-worker, the officers instructed her to return Reynolds' keys. Under these circumstances, the State posits, the officers did not incite or induce Reynolds to drive, they merely afforded him the opportunity to do something he had decided against their advice to do anyway. None of these facts are genuinely in dispute.

¶12 In *State v. Canon* (1984), 212 Mont. 157, 167, 687 P.2d 705, 710, we set forth the following elements of entrapment: (1) criminal intent or design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. We stated that there is a distinction between inducing a person to commit an unlawful act, and setting a trap to catch him or her in the execution of a criminal design of his or her own conception. *See Cannon*, 212 Mont. at 167, 687 P.2d at 710 (citation omitted). Merely affording the defendant the opportunity or facility for committing an offense is not entrapment. *See* § 45-2-213, MCA. *State v. Sweet*, 1998 MT 30, ¶ 22, 287 Mont. 336, ¶ 22, 954 P.2d 1133, ¶ 22.

5

¶13 In *Sweet*, Sweet was approached on two different occasions by a confidential informant (CI) wearing a "body wire." The CI inquired whether Sweet would sell him marijuana. On both occasions, Sweet did so. On the basis of the tapes recording the transactions, Sweet was subsequently arrested and charged with two counts of felony criminal sale of dangerous drugs. Sweet asserted, among other defenses, that he was entrapped. We concluded that there was no evidence to suggest that Sweet lacked criminal intent or that he was lured into committing a crime which he had no intention of committing. *Sweet*, 1998 MT 30, 287 Mont. 336, 954 P.2d 1133. We further noted that "affording the defendant the opportunity or facility for committing an offense is not entrapment." *Sweet*, ¶ 22.

¶14 In the case before us, Reynolds has failed to prove the elements of entrapment. First, there has been no assertion that "criminal intent or design" originated in the minds of the officers. Therefore, that element is inapplicable. Second, Reynolds asserts that he "clearly had no criminal intent or design to drive his vehicle from the bar on August 29, 2002." This claim is baffling in light of the fact that after voluntarily giving his keys to the bartender, he subsequently demanded that his keys be returned to him and upon receiving them, he got in his car and drove away. This was Reynolds' idea, and not the idea of the officers who had repeatedly told him not to drive. We conclude there was no "absence of criminal intent" on Reynolds' part. Lastly, Reynolds maintains that the officers, by arranging to return the keys to him, "lured or induced [him] to drive away from the bar, even though [he] had taken precautions not to commit the alleged offenses." There is no evidence from which to

6

conclude that the officers lured or induced Reynolds to demand the return of his keys and to get in his car and drive. As indicated in *Sweet* above, "there is a distinction between inducing a person to commit an unlawful act, and setting a trap to catch him or her in the execution of a criminal design of his or her own conception." In the case before us, the officers merely afforded Reynolds the opportunity to commit the offenses with which he was charged and found guilty. This is not entrapment.

## CONCLUSION

¶15 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART