FILED

03/06/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0538

DA 16-0538

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 38

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

AREN KRISTIAN LINDQUIST,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 14-344
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Gregory D. Birdsong, Birdsong Law Office, PC, Missoula, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Emily Caton, Student Intern, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  January 10, 2018

Decided:  March 6, 2018

Filed:

                      Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Aren Kristjan Lindquist appeals the order from April 13, 2015, by the Eighth Judicial District Court, Cascade County, denying his motion to dismiss for entrapment as a matter of law. We address:

> *Whether the District Court erred in denying Lindquist's motion to dismiss for entrapment as a matter of law.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On July 22, 2014, the Internet Crimes against Children Task Force of the Great Falls Police Department ("Task Force") posted an advertisement ("Ad") entitled "B$a$r$r$r$y L$e$g$a$1 – 18" in the "great falls escorts" subsection of the "great falls adult entertainment" section of Backpage.com. The Ad included a photograph of a scantily-clad female, with her face cropped out of the photograph. The text of the Ad read:

> Jessica is visiting Great Falls
> Independent
> Call or text
> no blocked or restricted numbers
> (406)285-2836
> Poster's age: 18
> Location: Great Falls

Shortly after the Ad posted, Lindquist responded to the number listed and initiated the following text message conversation[1] with the Task Force's undercover officer ("UC"), posing as pimp:

> Lindquist:    Hey how's it going??:-)

---

[1] All the conversations include typographical errors as found in the original transcripts.

| | |
|---|---|
| Lindquist: | Saw your add would love to meet up ! |
| UC: | u in gfs |
| Lindquist: | In Craig which is close by ! |
| UC: | my girls are under 18 is that ok |
| Lindquist: | How old ? |
| UC: | will I have 2 one 12 and one 15 years olds |
| Lindquist: | Do you have pictures ? |
| UC: | I do but I cant sent on my track phone |
| Lindquist: | Ok do you need an e-mail ? |
| UC: | they r pretty |
| UC: | I don't have a computer |
| UC: | the picture on the ad is real |
| Lindquist: | Ok are you a cop? |
| UC: | no u a fuckin cop what the . . . |
| UC: | call if your interested |

¶4    The Task Force searched the number, identified the caller as Lindquist, and applied for a warrant to record their conversations.  Lindquist and the UC arranged to meet later that night, but when Lindquist did not show up, the UC texted Lindquist that his appointment would be canceled.

¶5    The following morning, on July 23, 2014, Lindquist replied to the previous night's text message and proceeded to arrange another meeting at a motel in Great Falls for later that day:

| | |
|---|---|
| Lindquist: | Good morning how's it going? |

| | |
|---|---|
| Lindquist: | are you around today ? |
| UC: | yes |
| Lindquist: | Ok well I am here in great falls when do you think you will be around? |
| UC: | I'm here now |
| UC: | I guess you are going to be a no show again |
| Lindquist: | No I am just finishing up my last errand where am I going? |
| UC: | how long? |
| Lindquist: | I am done |
| UC: | do you know where the O'haire is? |
| Lindquist: | Yes |
| UC: | text me when your here |
| Lindquist: | I am here |
| UC: | I'm in room 130 |
| Lindquist: | Do I just come in ? |
| UC: | yeah just come to the room |
| Lindquist: | Ok I am here |

Once in the motel room, the UC and Lindquist had the following in-person conversation:

| | |
|---|---|
| UC: | Hi come in dude what's up? |
| Lindquist: | Nothin' just hanging out |

.  .  .

| | |
|---|---|
| UC: | Have a seat sorry it's kind of messy um alright so did you want ok so Kim |
| Lindquist: | Um hum |

4

UC: Is that still who you want to go with ur

Lindquist: Um

UC: Ok she's getting ready

.   .   .

UC: I just need to know what your plans are and everything

Lindquist: Ok

UC: Just common in the business so

Lindquist: Ok I'm willing to do anything

UC: Ok so I mean ok so I didn't even know are you planning on going full force with her are you planning on being anal anything that we should not got off guard you know what I'm saying?

Lindquist: Ok

UC: So

Lindquist: like regular

UC: Just regular intercourse or

Lindquist: Yeah

UC: Ok alright cool ok she is super cute she's excited to meet you and you want 10 or 15 youth that's who you want

Lindquist: Yeah

UC: Ok how much time do you want?

Lindquist: Well I don't I don't know exactly

UC: Yeah exactly so for a half hour we can do $150

Lindquist: Um k

UC: Um if you want less time we can negotiate that for an hour um with her cause she's with Kim she's 15 the one that's more experienced she for an hour I'd probably want for you you probably do $250

Lindquist: Um hum

UC: So it's up to you like

Lindquist: Um k I didn't bring money

UC: You didn't bring any cash with you? Oh k

Lindquist: I didn't want I didn't know what the I've never done this

UC: Ok well there's an ATM in the Lobby

.   .   .

UC: Your call, um if you but dude you have to come with cash

Lindquist: Yeah

UC: You know what I'm saying?

Lindquist: Um hum

UC: But I totally understand if you just wanted to come and meet me and discuss things like I feel better about that any way

Lindquist: Um hum

UC: Rather than over the phone

Lindquist: Um hum

UC: Cause that can

Lindquist: Yeah

UC: You know what I'm saying because I have to be careful

Lindquist: You're not a cop or anything?

UC: Uh are you a cop?

Lindquist:     No

UC:            Ok

Lindquist:     Are you a cop

UC:            No I'm not a fuckin cop

Lindquist:     Ok

UC:            Alright

Lindquist:     Would you tell me if you [inaudible] law enforcement

UC:            I'm not and I actually take offence to that so

Lindquist:     I'm just

UC:            If you are

Lindquist:     No

UC:            You know I don't want to have anything to do with you

Lindquist:     No I'm not

UC:            Because I need to watch out for these girls

            .   .   .

UC:            You tell me what you want to do

Lindquist:     Um half hour

UC:            Half hour ok alright so if you want to go get the money

Lindquist:     Um hum ok

UC:            And we'll go from there

            .   .   .

Lindquist left the room to retrieve cash from the ATM.  Once he returned and paid the UC $160, he confirmed he wanted the "older girl" with the following exchange:

7

| | |
|---|---|
| UC: | Ok well she's 15 just gotta let you know that |
| Lindquist: | Um hum |
| UC: | She has some experience but she is 15 so if you can just be good to her |
| Lindquist: | Um hum |
| UC: | You know I can I trust you with that? |
| Lindquist: | Um hum |
| UC: | And that's why I just need a little more detail on what you want to do with her I'm like mother now |
| Lindquist: | Just regular sex |
| UC: | Regular intercourse |
| Lindquist: | Um hum |
| UC: | Any thing else |
| Lindquist: | [Inaudible] |
| UC: | Ok alright ok um and you want a half hour |
| Lindquist: | Yeah |
| UC: | I don't have change cause you gave me $160 |
| Lindquist: | Um hum |
| UC: | Ok so you cool with that? |
| Lindquist: | Yeah |
| UC: | What I'll do then I'll tack on 10 minutes for you |
| Lindquist: | Really |

.   .   .

| | |
|---|---|
| UC: | So you're planning on intercourse nothing weird |

Lindquist:     Nothing weird

. . .

The UC left the motel room as if to retrieve fifteen-year-old Kim, then another officer entered the room and arrested Lindquist.

¶6 On August 6, 2014, the State charged Lindquist with felony Attempted Prostitution, in violation of §§ 45-4-103 and 45-5-601(3), MCA. On November 7, 2014, Lindquist filed a motion to dismiss, asserting the affirmative defense of entrapment. On April 13, 2015, the District Court denied Lindquist's motion to dismiss for entrapment as a matter of law, holding that the record reflected conflicting facts as to the origination of criminal intent and Lindquist's state of mind that made submitting the issue of entrapment to a jury proper. On February 23, 2016, following two trial continuances, Lindquist reached a plea agreement with the State and pled guilty. On July 5, 2016, the District Court sentenced Lindquist to the Department of Corrections for twenty-five years with twenty years suspended and designated him as a Tier 1 sexual offender. Lindquist timely appeals the District Court's denial of his motion to dismiss on the grounds of entrapment as a matter of law.

## STANDARDS OF REVIEW

¶7 The denial of a pretrial motion to dismiss in a criminal case is a question of law, we review for correctness. *State v. Reynolds*, 2004 MT 364, ¶ 8, 324 Mont. 495, 104 P.3d 1056. When reviewing a denial of a motion to dismiss based on entrapment, we review the evidence and inferences in a light most favorable to the State. *Reynolds*, ¶ 8. A court may determine that entrapment exists as a matter of law; however, if a genuine issue

9

of material fact exists, the issue is properly submitted to a jury. *Reynolds*, ¶ 9 (citing *State v. Kim*, 239 Mont. 189, 194, 779 P.2d 512, 515 (1989)).

## DISCUSSION

¶8    *Whether the District Court erred in denying Lindquist's motion to dismiss for entrapment as a matter of law.*

¶9    Entrapment is an affirmative defense afforded to a defendant by statute:

> A person is not guilty of an offense if the person's conduct is incited or induced by a public servant or a public servant's agent for the purpose of obtaining evidence for the prosecution of the person. However, this section is inapplicable if a public servant or a public servant's agent merely affords to the person the opportunity or facility for committing an offense in furtherance of criminal purpose that the person has originated.

Section 45-2-213, MCA. A court may determine that entrapment exists as a matter of law in the absence of genuine issues of material fact. *Reynolds*, ¶ 9. If there are conflicting facts, the issue is properly submitted to a jury. *Reynolds*, ¶ 9 (citing *Kim*, 239 Mont. at 194, 779 P.2d at 515); *see also Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 886 (1988) ("The question of entrapment is generally one for the jury, rather than for the court."). The defendant bears the burden of proof when asserting entrapment and must show: (1) criminal design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. *Reynolds*, ¶¶ 9, 12 (citing *State v. Canon*, 212 Mont. 157, 167, 687 P.2d 705, 710 (1984)).

¶10    A distinction exists between inducing a person to commit an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception. *Reynolds*, ¶ 12 (citing *Canon*, 212 Mont. at 167, 687 P.2d at 710). Inducement may be found when

10

an agent pleads, begs, or coerces a person into committing a crime. *State v. Harney*, 160 Mont. 55, 60, 499 P.2d 802, 805 (1972). Merely affording a person the opportunity to commit an offense or by setting a trap is not inducement or entrapment. *Reynolds*, ¶ 12 (citing § 45-2-213, MCA). Because sex trafficking crimes are the type of offense committed secretly, securing evidence and catching offenders is more difficult and often requires law enforcement to use covert operations. *Harney*, 160 Mont. at 60–61, 499 P.2d at 805 (quoting *State v. Karathanos*, 158 Mont. 461, 470, 493 P.2d 326, 330–31 (1972)). Courts sanction the use of sting operations "if the officers do not by persuasion, deceitful representations or inducement, lure a person who otherwise would not be likely to break the law, into a criminal act." *Harney*, 160 Mont. at 60–61, 499 P.2d at 805 (internal citations omitted).

¶11 Lindquist argues that the Task Force entrapped him into attempted prostitution with a minor by inducing him into replying to the Ad on Backpage.com with a seductive photo, luring him to a motel room, and cajoling him into retrieving money from an ATM to pay for sex. Lindquist asserts the criminal intent to engage in prostitution originated in the mind of the Task Force when it placed the Ad on Backpage.com. He maintains he was merely curious about the Ad and did not intend to engage in sex with a minor evidenced by the fact that he went to the motel room without money.

¶12 The State counters that Lindquist fails to show the record contains no conflicting facts regarding entrapment as a matter of law, and the District Court correctly determined the issue should be submitted to a jury. The State maintains Lindquist cannot prove that criminal intent originated with the Task Force, that he lacked criminal intent to commit the

offense, or that the Task Force induced him into committing a crime he had no intention of committing, thus failing to establish entrapment as a matter of law. The State asserts the idea to purchase sex from the Backpage.com Ad originated with Lindquist as evinced by his series of actions.

¶13 The District Court determined conflicting facts existed regarding two of the three elements of entrapment as a matter of law, and that the issue of entrapment should be submitted to the jury. The District Court noted conflicting facts concerning: (a) whether the criminal design originated with the Task Force or Lindquist and (b) whether Lindquist's actions could lead a jury to conclude he was merely curious with no intent to commit a crime or that he was induced by law enforcement to commit a crime he had no intention to commit. We agree.

¶14 We have repeatedly held that affording the defendant an opportunity to commit a crime is not inducement or entrapment. *Reynolds*, ¶ 12; *Harney*, 160 Mont. at 60–61, 499 P.2d at 805; *Karathanos*, 158 Mont. at 470, 493 P.2d at 330–31. The Task Force's Ad on Backpage.com merely provided Lindquist the opportunity to commit a criminal act by soliciting a prostitute. It is not as if the Task Force called Lindquist. Lindquist then made several additional affirmative decisions from which a reasonable jury could conclude that the idea to engage in the criminal behavior originated in his mind. After reading the Backpage.com Ad, Lindquist dialed the contact information. After learning that the prospective sex workers were ages twelve and fifteen, Lindquist arranged a meeting at a Great Falls motel. In the motel room, he proceeded to negotiate for a half-hour of "regular sex" with a fifteen-year-old girl. After indicating that he did not bring cash with him,

Lindquist retrieved $160 from an ATM, returned to the room, and paid the UC $160 cash to have sex with a minor. Given these facts, Lindquist's entrapment defense would have been a tough sell to a jury, much less warranting dismissal as a matter of law. The District Court did not err when it denied Lindquist's motion to dismiss based on the affirmative defense of entrapment.

## CONCLUSION

¶15 The District Court correctly denied Lindquist's motion to dismiss based on the affirmative defense of entrapment as a matter of law. Because conflicting facts existed as to whether Lindquist had the requisite intent to commit the criminal act, the District Court correctly denied the motion and concluded the issue of entrapment must be submitted to a jury. *Reynolds*, ¶ 9 (citing *Kim*, 239 Mont. at 194, 779 P.2d at 515). We affirm.


/S/ JAMES JEREMIAH SHEA


We Concur:

/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE