FILED

10/25/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0455

DA 20-0455

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 213

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RONALD JOSEPH VALLIE, JR.

      Defendant and Appellant.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DC-19-099
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Chad M. Wright, Appellate Defender, Carolyn Gibadlo, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

           Austin Knudsen, Montana Attorney General, Bree Gee, Assistant
Attorney General, Helena, Montana

           Brett Irigoin, Dawson County Attorney, Glendive, Montana

Submitted on Briefs:  May 4, 2022

Decided:  October 25, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Ronald Joseph Vallie, Jr., appeals the May 4, 2020 Order by the Seventh Judicial District Court, Dawson County, denying his motion to dismiss based on the affirmative defense of entrapment. We restate the issue on appeal as follows:

*Whether the District Court erred by denying Vallie's motion to dismiss for entrapment as a matter of law.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On October 18, 2019, the State charged Vallie by Information with Count I: Criminal Distribution of Dangerous Drugs—Methamphetamine, a felony, and Count II: Use or Possession of Property Subject to Criminal Forfeiture, a felony. On October 29, 2019, Vallie entered not guilty pleas to both charges.

¶3 On December 13, 2019, Vallie filed motions to suppress and dismiss, asserting the affirmative defense of entrapment and asking the court to suppress over 400 messages between him and an undercover police agent's fictitious online persona named "Jordan" as well as drugs that law enforcement had seized from his vehicle. The District Court held a hearing on March 6, 2020. The District Court issued an Order on May 4, 2020, denying both of Vallie's motions. Regarding his motion to dismiss, the District Court determined that the elements of entrapment were not met as a matter of law "[b]ecause a factual issue exists between the readiness and willingness to distribute methamphetamine by [Vallie], and the point in which law enforcement suspected that Vallie was engaged in the distribution of methamphetamine."

¶4 Vallie pled guilty to Count I on June 9, 2020, preserving his right to appeal the court's denial of his motion to dismiss. The District Court dismissed Count II, upon the State's motion and sentenced Vallie to the Department of Corrections for four years, all suspended, with four days credit for time served.

¶5 The facts relevant to Vallie's conviction are as follows: Montana Division of Criminal Investigation Agent Cameron Pavlicek created and managed the MeetMe social media profile of a fictitious 29-year-old female named "Jordan." At the suppression hearing, Agent Pavlicek testified that he invented Jordan as a way to identify criminal activity, specifically drug activity, on MeetMe. Agent Pavlicek testified that law enforcement did not know of Vallie and was not actively investigating him for any criminal offense before Vallie reached out to Jordan on MeetMe.

¶6 Vallie sent his initial messages to Jordan on June 22, June 23, and July 2, 2019. He told her that she was "beautiful," "perfect," and "a goddess," and stated that he would kneel at her feet and "worship" her. On July 3, 2019, Jordan replied to Vallie for the first time. As part of their conversation, Jordan asked Vallie what drugs he preferred to smoke, to which Vallie responded "Can't answer that here[.] I prefer to speed up[.]" After a few additional messages, the conversation terminated.

¶7 The next day, Vallie sent a message to Jordan, telling her "I think you would be fun" and gave her his cell phone number to continue the conversation. Jordan did not respond. Later that same night, Jordan texted Vallie, asking if he was "one of those guys watching out about the government lol" because Vallie had mentioned that he rarely gives out his number and was hesitant to talk about drugs the night before. Vallie replied, "I'm a

3

veteran" and "[j]ust like to get to know someone before I risk it. Lol[.] I only do some once in a while[.]" After some back-and-forth about how they both only "like to tweek [sic]" "once in a while," Vallie told Jordan he was "spun right now" and professed his physical desire for her. Jordan did not respond.

¶8 Vallie and Jordan messaged almost daily the following week, usually via text messages, but Vallie would occasionally reach out to Jordan on MeetMe if she was not responding to his texts. Vallie continued to tell Jordan that she was a goddess, that she was beautiful, and that he worshiped her. On July 8, 2019, Jordan asked Vallie if he wanted to meet up during the week, but Vallie did not answer. A couple of days later, Vallie texted Jordan, "If you want to meet. I got time today[.] It's your call[.] I can make you feel better[.]" Vallie and Jordan made a plan to meet later that afternoon, but the plan fell through.

¶9 Vallie texted Jordan ten times over the following month, but she did not respond. Then, on August 16, 2019, Vallie reached out to Jordan on MeetMe, and they resumed chatting every couple of days with no reference to drugs until September 4, 2019, when Jordan sent Vallie a MeetMe message asking, "U [sic] have any clear?" Vallie responded, "If I got some. Can I worship you while you smoke[?]" This tone of the conversation continued, alternating between Vallie telling Jordan he wanted to worship her and Jordan redirecting the conversation back to getting high. They discussed the details of meeting up over the next day and night, during which Vallie continued to make his desire for Jordan known. Jordan then stopped responding.

4

¶10 Vallie persistently attempted to contact Jordan over the next three days, but Jordan did not respond. Then on September 8, 2019, the fourth day, Jordan responded to Vallie's message: "If you want to smoke I got a little and a little free time"; to which Jordan responded, "When and where?" but did not pick up either of Vallie's two immediate phone calls. Vallie and Jordan again exchanged messages about meeting up on September 9, 2019. On September 10, 2019, Vallie texted, "Want to," adding, "Only got a little left[.] A couple puffs but it's your [sic] if you want[.]" Jordan did not respond.

¶11 On September 13, 2019, Vallie again texted, "Want to . . . You say where. I got." Jordan suggested a room at the LaQuinta hotel, around 9:15 p.m. When Vallie arrived at the hotel, officers confronted him. Before patting him down, Vallie admitted that he had a small pipe in his sock. After obtaining a search warrant, officers searched the truck and found, among other items, a small baggie containing 1.89 grams of methamphetamine.

## STANDARDS OF REVIEW

¶12 A district court's denial of a pretrial motion to dismiss in a criminal case presents a question of law, which this Court reviews de novo. *State v. Lindquist*, 2018 MT 38, ¶ 7, 390 Mont. 329, 413 P.3d 455 (citing *State v. Reynolds*, 2004 MT 364, ¶ 8, 324 Mont. 495, 104 P.3d 1056). We review the evidence and inferences made in a district court's denial of a motion to dismiss based on entrapment in a light most favorable to the State. *State v. Brandon*, 264 Mont. 231, 242, 870 P.2d 734, 741 (1994).

## DISCUSSION

*Whether the District Court erred in denying Vallie's motion to dismiss for entrapment as a matter of law.*

¶13 Section 45-2-213, MCA, provides that "[a] person is not guilty of an offense if the person's conduct is incited or induced by a public servant or a public servant's agent for the purpose of obtaining evidence for the prosecution of the person." Entrapment is not applicable "if a public servant or a public servant's agent merely affords to the person the opportunity or facility for committing an offense in furtherance of criminal purpose that the person has originated." Section 45-2-213, MCA. "[T]here is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception." *Brandon*, 264 Mont. at 243, 870 P.2d at 741 (citing *State v. Karathanos*, 158 Mont. 461, 470, 493 P.2d 326, 331 (1972)).

¶14 The burden of establishing entrapment as an affirmative defense rests with the defendant, who must prove:

(1) criminal design originating in the mind of the police officer or informer;

(2) absence of criminal intent or design originating in the mind of the accused; and

(3) luring or inducing the accused into committing a crime he had no intention of committing.

*State v. Kyong Cha Kim*, 239 Mont. 189, 194, 779 P.2d 512, 515 (1989).

¶15 Once the defendant establishes evidence of inducement, it is the government's burden to prove that the defendant was predisposed to violate the law before the government intervened. *Brandon*, 264 Mont. at 242, 870 P.2d at 740. A court may

6

determine that entrapment exists as a matter of law, but if there are conflicting facts, the issue is properly submitted to a jury. *Reynolds*, ¶ 9.

¶16    Vallie argues that the undisputed facts of his encounter with "Jordan" establish entrapment as a matter of law, which the State failed to rebut by not providing any evidence that Vallie was predisposed to distribute methamphetamine prior to government intervention. The State maintains that because Vallie failed to prove that criminal intent originated with law enforcement and that Vallie was induced to commit a crime, the burden to show predisposition never shifted to the State. After a thorough review of the evidence in the light most favorable to the State, we hold that Vallie did not establish he was entrapped as a matter of law.

¶17    Assuming for the sake of the argument that Vallie satisfied the first two elements of entrapment, there remains a factual dispute as to whether Agent Pavlicek induced Vallie into committing a crime he otherwise had no intention of committing. In *State ex rel. Hamlin v. District Court*, this Court stated that the "luring or inducement of the accused to commit a crime he had no intention of committing" may be made "by force and coercion or by other means." 163 Mont. 16, 20, 515 P.2d 74, 76 (1973). We noted in *Lindquist* that "[i]nducement may be found when an agent pleads, begs, or coerces a person into committing a crime." *Lindquist* ¶ 10.

¶18    In *Lindquist*, we held that the defendant was not induced to commit a crime because he made several affirmative decisions "from which a reasonable jury could conclude that the idea to engage in the criminal behavior originated in his mind" and therefore the defendant was not entrapped as a matter of law. *Lindquist*, ¶ 14. By contrast, in *Kamrud*,

7

we reversed a district court's denial of a motion to dismiss based on entrapment because "there was no evidence whatsoever that Kamrud had ever sold or offered to sell drugs to anyone prior to his 'sale' to [the officers], which was made at their request . . . ." *State v. Kamrud*, 188 Mont. 100, 107, 611 P.2d 188, 192 (1980). Likewise, in *Grenfell*, we determined the criminal enterprise originated in the informant's mind, not in the mind of the accused based in part on the informant's persistent efforts over several days to convince the defendant to purchase drugs by "coax[ing] him with visions of [the informant's] personal need and [the accused's] need to have money to travel to Utah to find a job." *State v. Grenfell*, 172 Mont. 345, 349, 564 P.2d 171, 174 (1977).

¶19 The majority of Jordan and Vallie's conversations centered around Vallie's desire for Jordan. But there were considerable periods where Jordan ignored Vallie's messages for days, even weeks, at a time. There were also multiple occasions, particularly in the days leading up to Vallie's arrest, when Vallie initiated conversations with Jordan about smoking together and getting high without any reference to physical intimacy. After Jordan did not respond to Vallie's September 10, 2019 message informing her that he had "[o]nly . . . a little left[.] A couple puffs but it's your [sic] if you want," Vallie again messaged Jordan three days later with, "Want to . . . You say where. I got." This final exchange resulted in Vallie's arrest.

¶20 When reviewed in the light most favorable to the State, a factual dispute exists as to whether Agent Pavlicek induced Vallie into engaging in criminal activity. *See Lindquist*, ¶ 13. Agent Pavlicek did not leverage vulnerable details about Vallie's life to coax Vallie to meet him and get high. *Grenfell*, 172 Mont. at 349, 564 P.2d at 174. Nor did Agent

8

Pavlicek request Vallie to do anything completely out of character. Vallie indicated in his messages that he had experience using drugs, both with himself and with others. *Kamrud*, 188 Mont. at 107, 611 P.2d at 192. Vallie's affirmative decisions combined with his messages vacillating between his desire for Jordan and only getting high with Jordan create room for a reasonable juror to find that Agent Pavlicek did not induce Vallie to meet Jordan and supply her with drugs. Had he decided to go to trial, Vallie certainly had a viable entrapment defense to present for the jury's consideration. But at least as it pertains to the third element, Vallie did not meet his burden to establish the affirmative defense of entrapment as a matter of law.

## CONCLUSION

¶21 The District Court did not err by denying Vallie's motion to dismiss. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

9